Francisco Javier CRUZ and Melody Cruz,
Plaintiffs and Appellants,

v.

MIDDLEKAUFF LINCOLN–MERCURY,
INC., a Delaware corporation,
Defendant and Appellee.

No. 940399.

Supreme Court of Utah.

Jan. 10, 1996.

Robert B. Sykes, Matthew H. Raty, Salt Lake City, for plaintiffs and appellants.

Aaron Alma Nelson, Clifford J. Payne, Salt Lake City, for defendant and appellee.

HOWE, Justice:

We granted defendant Middlekauff Lincoln–Mercury, Inc.'s petition for interlocutory appeal after the trial court denied its motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. Utah R.Civ.P. 12(b)(6). The propriety of a trial court's decision to grant or deny a motion to dismiss under rule 12(b)(6) is a question of law that we review for correctness. *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). In reviewing the trial court's ruling, we accept the factual allegations in the complaint as true and draw all reasonable inferences from those facts in a light most favorable to plaintiffs. *Roark v. Crabtree*, 893 P.2d 1058, 1059–60 (Utah 1995) (citing *Prows v. State*, 822 P.2d 764, 766 (Utah 1991); *St. Benedict's Dev. Co.*, 811 P.2d at 196). We recite the facts accordingly.

## I. FACTS

Middlekauff is a car dealership located in Salt Lake County engaged in the business of selling new and used cars. In the early evening of May 16, 1992, a thief walked onto the dealer's premises, got into a 1991 Lincoln Towncar, turned the key that had been left in the ignition by Middlekauff employees, and drove the car out of the lot, all without being challenged. At about 8:00 that evening, police located and pursued the stolen car. The thief, seeking to evade the police, sped through a red light and crashed into the car of plaintiffs Francisco Javier Cruz and Melody Cruz. As a result of the accident, the Cruzes suffered severe medical injuries, as well as the loss of their unborn child with whom Mrs. Cruz was five months' pregnant.

Middlekauff had a management policy to leave the keys in the ignitions of certain cars parked on its lot, and it customarily did so. Numerous other Middlekauff cars with keys in the ignitions had been stolen prior to this incident, including several thefts by this particular thief. The public had easy access to the cars, which were parked in a location that permitted them to be driven off the lot without attracting attention. Middlekauff provided no surveillance or security for the cars. The car that was stolen in this case was left unattended during the early evening hours when there were numerous customers on the lot, and the theft was not immediately noticed by Middlekauff.

The Cruzes filed this action against Middlekauff for medical expenses, lost wages, and various other types of damages, including punitive damages. The complaint alleges that Middlekauff is liable for negligence and negligent infliction of emotional distress because it was foreseeable that its thief-operated cars would be recklessly or negligently driven and cause injury and death to members of the public. In response, Middlekauff filed a rule 12(b)(6) motion to dismiss. The trial court denied the motion, and we granted Middlekauff's petition for interlocutory appeal.

## II. ANALYSIS

We examine whether, under the facts alleged, Middlekauff may be liable for injuries caused by the thief on the theory that it was negligent in leaving keys in the car that was stolen. Middlekauff contends that the case of *Rollins v. Petersen*, 813 P.2d 1156 (Utah 1991), precludes this action because it stands for the principle that a vehicle owner has no duty to protect an injured plaintiff from the negligent driving of a thief. The Cruzes counter that *Rollins* is not applicable because the plaintiffs in that case sued the car owners on the sole theory that a statute, Utah Code Ann. § 41–6–105, created a duty owed by the vehicle owner, without examining or ruling on whether a common law duty existed.

In *Rollins*, an escapee of a mental hospital found an unattended car with its engine running on a nearby residential street. *Id.* at 1158. He stole the car and while fleeing police, collided head-on with another vehicle, killing the decedent. The decedent's estate brought an action against, among others, the owners of the car, alleging that "they negligently failed to secure their automobile and that [the decedent's] death proximately resulted." *Id.* The trial court granted summary judgment for the owners, finding that they owed no duty of care to the decedent.

On appeal, the estate argued that "section 41–6–105 of the Code, which requires owners of cars to secure their vehicles when left unattended, creates a duty owed by the [owners] to [the decedent]." *Id.* We further identified the issue as follows:

> Plaintiffs base their claim of a duty on the fact that section 41–6–105 of the Code imposes a duty on operators of motor vehicles to turn off the engine, lock the ignition, and remove the key when they leave the car unattended. . . .
>
> . . . The [owners] admit to violating section 41–6–105. Therefore, the question is whether we should view the requirement of section 41–6–105 as establishing a tort duty owed to any person who might be injured in an accident involving one who steals a car as a result of the statute's violation.

*Id.* at 1162–63. We then proceeded to analyze the "circumstances under which it is appropriate for a court to adopt a statutory standard of conduct as that of a reasonable person and to impose a tort duty to act toward a person in accordance with that standard." *Id.* at 1163. We concluded that the statute was not intended "to create a duty to the decedent to protect him from the harm which befell him" and therefore "section 41–6–105 imposes no duty on the [owners] that is actionable by [the estate]." *Id.* at 1164. As a result, we affirmed the trial court's grant of summary judgment for the car owners. *Id.*

The articulated issue, analysis, and holding in *Rollins* all indicate that we examined only the narrow question of "whether the legislative standard imposes a duty recognizable in tort as the standard of a reasonable person." *Id.* at 1164 n. 4. We did not address whether a vehicle owner may, under certain circumstances, owe a common law duty to plaintiffs injured by the owner's stolen vehicle. Therefore, *Rollins* does not govern the resolution of this case.[1]

▮ To prevail on a negligence claim, a plaintiff must establish that the defendant owed the plaintiff a duty, that the defendant breached that duty, that the breach was the proximate cause of the plaintiff's injury, and that the plaintiff, in fact, suffered injuries or damages. *Hunsaker v. State,* 870 P.2d 893, 897 (Utah 1993). Most courts that have examined "key-in-ignition" cases have denied relief to the plaintiff by holding either that the car owner owed no duty to the victim injured by the thief, *see, e.g., Lorang v. Heinz,* 108 Ill.App.2d 451, 248 N.E.2d 785, 789 (1969); *Flannery v. Sample Hart Motor Co.,* 194 Neb. 244, 231 N.W.2d 339, 342 (1975); *Liney v. Chestnut Motors, Inc.,* 421 Pa. 26, 218 A.2d 336, 338 (1966), or that the theft constituted an unforeseeable, intervening criminal act that broke the chain of causation between the negligence of the car owner and the injuries of the plaintiff. *See, e.g., J.C. Lewis Motor Co. v. Giles,* 194 Ga. App. 472, 391 S.E.2d 19, 20 (1990); *Kalberg v. Anderson Bros. Motor Co.,* 251 Minn. 458, 88 N.W.2d 197, 198 (1958); *Pendrey v. Barnes,* 18 Ohio St.3d 27, 479 N.E.2d 283, 284 (1985). *See generally* William H. Danne, Annotation, *Liability of Motorist Who Left Key in Ignition For Damage or Injury Caused by Stranger Operating the Vehicle,* 45 A.L.R.3d 787 (1972 & Supp.1995); 8 Am. Jur.2d *Automobiles & Highway Traffic* § 919 (1980).

---

1. Middlekauff notes that as a closing comment in *Rollins,* we explained that our holding "is in harmony with past cases of this court holding that mere ownership of an automobile does not render the owner liable for the negligent actions of the driver." *Rollins,* 813 P.2d at 1164 (citing *Wilcox v. Wunderlich,* 73 Utah 1, 23–24, 272 P. 207, 223 (1928); *McFarlane v. Winters,* 47 Utah 598, 155 P. 437, 441 (1916) (both holding parents not liable for the negligent driving of their minor children)). We are not persuaded that this broad statement demonstrates that *Rollins* considered the existence of a common law duty.

One Utah case, *Nellsch v. Westland Ford, Inc.*, 646 P.2d 736 (Utah 1982) (per curiam), echoes those decisions. In that case, "[t]he plaintiff sued the defendant for damages to her car allegedly caused when the latter negligently left the keys in a car placed on its used-car lot. Unknown persons stole [the] defendant's car, ran it into the plaintiff's vehicle[,] and then fled the scene of the accident." *Id.* at 737. In affirming the trial court's grant of the defendant's motion to dismiss, we held:

> The generally accepted authorities deny recovery *under such circumstances.* One having a lawful right to the possession of property, such as an automobile, although negligent in leaving the keys therein, has no duty to respond in damages caused by a thief who takes it and runs into a third party's vehicle. *In all but the most unusual circumstances,* there is no proximate cause between the negligence of the one having such right to possession and that of a thief whose negligent driving is an independent, intervening cause of the damage.

*Id.* (footnotes omitted) (emphasis added).

While *Nellsch* correctly identifies the general rules of law applicable to generic key-in-ignition cases, we do not believe that it precludes this action. Holding otherwise would apply the rules broadly to all cases without regard to specific circumstances. Significantly, in *Nellsch* there were no allegations of previous thefts, lax surveillance, or any other special factors which would increase the foreseeability of risk to others. In addition, the court in *Nellsch* acknowledged that although the plaintiff had not alleged sufficient circumstances, "most unusual circumstances" could arise which would render theft and subsequent negligent operation of the car foreseeable, subjecting the owner to liability. The Cruzes contend that this is just such a case.

Middlekauff relies on *Rollins* and *Nellsch* and urges us to hold that (1) it did not have a duty to the Cruzes and (2) the theft broke the chain of causation between its alleged negligence and the Cruzes' injuries. The key to both of these issues is the foreseeability of the theft and the thief's subsequent negligent operation of the car resulting in injuries to the Cruzes. *See Steffensen v. Smith's Management Corp.*, 862 P.2d 1342, 1346 (Utah 1993) (foreseeability is required to establish both negligence and proximate cause).

### A. Middlekauff's Duty to the Cruzes

██ Many jurisdictions have held that under "special" or "unusual" circumstances, a duty may exist where a defendant should reasonably anticipate that its conduct will create an unreasonably enhanced danger to one in the position of the injured plaintiff. If such danger is foreseeable, then a duty arises to exercise reasonable care for the safety of others. *See* David H. Friedland, *Torts: Negligence: Car Owner Leaving Key in Vehicle Has a Duty to Third Person Injured by Thief,* 12 UCLA L.Rev. 1260, 1261 (1965); *Malan v. Lewis,* 693 P.2d 661, 672 n. 15 (Utah 1984) (duty to exercise reasonable care toward safety of others is essential to physical security and safety of all persons in civilized society). Each case must be considered on its own facts to determine whether they result in a foreseeable risk of harm to third persons in the class of plaintiffs and thus create a duty to refrain from subjecting them to such risk. *Palma v. U.S. Indus. Fasteners, Inc.,* 36 Cal.3d 171, 203 Cal.Rptr. 626, 635, 681 P.2d 893, 902 (1984); *Hergenrether v. East,* 61 Cal.2d 440, 39 Cal.Rptr. 4, 7, 393 P.2d 164, 167 (1964).

The "special circumstances" under which courts have permitted key-in-ignition actions to go forward have included (1) significant criminal activity in the area in which the vehicle was left, *see, e.g., Palma,* 203 Cal. Rptr. at 635, 681 P.2d at 902 (truck with open window in high-crime industrial area); *Vining v. Avis Rent–A–Car Sys., Inc.,* 354 So.2d 54, 55 (Fla.1977) (rental car at Miami airport lot known as high crime area); *Hill v. Yaskin,* 75 N.J. 139, 380 A.2d 1107, 1108 (1977) (parking lot in high crime area); (2) prior thefts of the defendant's vehicles, *see, e.g., Enders v. Apcoa, Inc.,* 55 Cal.App.3d 897, 127 Cal.Rptr. 751, 755 (1976) (parking lot continued policy requiring patrons to leave keys in ignitions despite history of thefts); *Vadala v. Henkels & McCoy, Inc.,* 397 A.2d 1381, 1383 (Del.Super.Ct.1979) (previous thefts from

storage yard); *Hill,* 380 A.2d at 1108 (parking lot had history of thefts); (3) irresponsible or reckless nature of people frequenting the area, *see, e.g., Palma,* 203 Cal.Rptr. at 634, 681 P.2d at 901 (extremely high transient population); *Hergenrether,* 393 P.2d at 167 (truck left in "skid row" area known to attract drunken idlers); *Richards v. Stanley,* 43 Cal.2d 60, 66, 271 P.2d 23, 27 (1954) (potential liability for leaving car in front of school where children could be expected to tamper with it); (4) lack of surveillance of the vehicle, *see, e.g., Murray v. Wright,* 166 Cal.App.2d 589, 333 P.2d 111, 113 (1958) (used car lot unenclosed and unguarded, despite common knowledge of key-in-ignition policy); *Vadala,* 397 A.2d at 1383 (no security measures); (5) vehicle left for extended period of time, *see, e.g., Palma,* 203 Cal.Rptr. at 634, 681 P.2d at 901 (overnight); *Hergenrether,* 393 P.2d at 167 (overnight); and (6) type and size of vehicle uniquely attractive or capable of inflicting serious damages, *see, e.g., Richardson v. Ham,* 44 Cal.2d 772, 285 P.2d 269, 271 (1955) (bulldozer parked on top of mesa); *Vadala,* 397 A.2d at 1382 (dump truck). Other special circumstances include the vehicle's access to public highways, its accessibility to the public, its operational condition, and the time of day or night the vehicle was taken. *Alberone v. King,* 26 Conn.Super. 98, 213 A.2d 534, 535 (1965); *McClenahan v. Cooley,* 806 S.W.2d 767, 776 (Tenn.1991).[2]

The Cruzes allege special circumstances that, if proved, may have made the theft of Middlekauff's car foreseeable, distinguishing this case from a traditional key-in-ignition car theft. Obviously a vehicle is more likely to be stolen if it is unlocked and its key is in its ignition. However, the Cruzes point to other conditions that significantly increased the likelihood of the theft. These include the numerous prior thefts of Middlekauff's key-in-ignition cars,[3] the public's unlimited access to the cars, Middlekauff's management policy of leaving keys in the ignitions of cars parked for lengthy periods of time in a commercial area, the cars' location permitting their unobstructed exit, and Middlekauff's lack of surveillance or security, even during evening hours. If these unusual circumstances can be proved, a fact finder could determine that the theft was foreseeable.

The foreseeability of the theft alone, however, does not create a duty by Middlekauff to the Cruzes. The duty arises only if it was also foreseeable that Middlekauff's thief-operated cars would be recklessly or negligently driven and cause injury and death to members of the public. The Cruzes allege that it was foreseeable "that a thief who took one of Middlekauff[f]'s cars would attempt to evade capture by fleeing a police officer at high speed, which would result in a serious accident to an innocent motorist." Other courts have observed that thief-driven vehicles often collide with third parties, causing injury and death. *See McClenahan,* 806 S.W.2d at 776; Mary Dee Perkins, *Tort Law—McClenahan v. Cooley: The Impact of Automobile Theft on Proximate Cause Issues,* 21 Mem.St. U.L.Rev. 595, 597 (1991). A thief primarily concerned with avoiding detection and arrest may disregard traffic laws, endangering pedestrians and motorists alike. Also relevant in this case is the relatively short time—a few hours at most—between the theft of the car and the accident injuring the Cruzes. The Cruzes should be given the opportunity to produce evidence of the foreseeability of the thief's negligent driving. We conclude that because the theft of the car and its negligent operation may have been foreseeable, Middlekauff may have owed a duty to

**2.** *Cf. Avis Rent A Car Sys., Inc. v. Superior Court,* 12 Cal.App.4th 221, 15 Cal.Rptr.2d 711, 719 (1993); *Archer v. Sybert,* 167 Cal.App.3d 722, 213 Cal.Rptr. 486, 491 (1985); *Hosking v. Robles,* 98 Cal.App.3d 98, 159 Cal.Rptr. 369, 373 (1979); *Smith v. Shaffer,* 395 N.W.2d 853, 856 (Iowa 1986); *Elliott v. Mallory Elec. Corp.,* 571 P.2d 397, 401 (Nev.1977); *Felty v. City of Lawton,* 578 P.2d 757, 762 (Okla.1977) (all finding insufficient special circumstances to send cases to jury).

**3.** In *Dwiggins v. Morgan Jewelers,* 811 P.2d 182, 183 (Utah 1991), we held that one prior robbery five years earlier was insufficient to make a subsequent robbery reasonably foreseeable. We contrasted the facts of *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46–49 (Colo.1987), wherein the Colorado Supreme Court held that ten prior armed robberies at the restaurant over a three-year period resulted in reasonably foreseeable harm to customers. *Dwiggins,* 811 P.2d at 183 n. 1. This case is more like *Taco Bell* than *Dwiggins.*

the Cruzes to take adequate precautions to prevent the theft of its cars.

### B. Proximate Causation

We next turn to whether the theft broke the chain of causation between Middlekauff's alleged negligence and the Cruzes' injuries. Proximate causation is generally a matter of fact to be determined by a jury. *McCorvey v. Utah State Dep't of Transp.*, 868 P.2d 41, 45 (Utah 1993); *Godesky v. Provo City Corp.*, 690 P.2d 541, 544 (Utah 1984). To establish proximate cause, the Cruzes must prove that Middlekauff's conduct was "a substantial causative factor" leading to their injuries. *McCorvey*, 868 P.2d at 45. An intervening, independent, and efficient cause ordinarily severs whatever connection there may be between the defendant's negligence and the plaintiff's injuries, *unless* the intervening cause was foreseeable. *Godesky*, 690 P.2d at 544–45. Thus, the fact that the instrumentality which produced the Cruzes' injuries was the criminal conduct of a third person "would not preclude a finding of proximate cause if the intervening agency was itself a foreseeable act." *Mitchell v. Pearson Enters.*, 697 P.2d 240, 246 (Utah 1985) (footnote omitted) (finding no direct evidence linking guest's murder with hotel's alleged inadequate security); *see also Steffensen*, 820 P.2d 482, 488 (Utah Ct.App.1991); Restatement (Second) of Torts § 302B (1965). In this case, the thief's criminal acts, though intervening, do not preclude a finding of proximate cause if the acts were foreseeable. The alleged facts of this case, if proved, may have made the theft of the car and the thief's subsequent negligent and injurious driving foreseeable.

### III. CONCLUSION

A vehicle owner ordinarily is not liable to third parties injured by the negligent driving of a thief, even if the owner leaves the key in the vehicle's ignition. However, this is alleg-

edly not a typical key-in-ignition case. Special circumstances are alleged that, if true, may have put Middlekauff on notice that its cars were targeted by thieves; yet it continued its key-in-ignition policy and other loose practices. Once the car was stolen, it may have been foreseeable that it would be operated in a manner hazardous to the public. Middlekauff's burden of securing the keys to its parked vehicles was slight, especially when compared to the severe damages which might—and here did—result from the theft of one of them.

We conclude that the trial court properly denied Middlekauff's rule 12(b)(6) motion to dismiss because under the alleged facts and the reasonable inferences therefrom, the complaint states a claim upon which relief can be granted.[4]

DURHAM, J., concurs in Justice HOWE's opinion.

STEWART, Associate Chief Justice, concurring:

I concur in the majority opinion and write only to respond briefly to Chief Justice Zimmerman's concurring opinion.

In his separate opinion he would hold that because of "empirical data," "it is logically impossible to continue to sustain the traditional rule" of law governing the liability of one who leaves keys in the ignition of a car which is stolen and subsequently involved in an accident. The empirical data referred to is a study indicating that "in approximately twenty-five percent of all vehicle thefts, the ignition key was left in the vehicle" and that "the accident rate for stolen vehicles is at least forty-seven times the accident rate for the general public." These statistics do not, in my view, undermine the traditional general rule of tort law that one who leaves a key in the ignition of a car cannot be held liable for damage caused a third party by a thief who steals the car.

---

4. In his dissent, Justice Russon characterizes this opinion as "imposing liability on Middlekauff." Similarly, Chief Justice Zimmerman's concurring opinion states that this opinion allows all creatively pleaded cases "to get to a jury." Both characterizations are inaccurate. Our conclu-

sion is merely that the complaint is sufficient to survive a 12(b)(6) motion to dismiss and that the Cruzes should be given the opportunity to produce evidence of the foreseeability of the theft and the thief's negligent driving.

Use of empirical data by way of judicial notice of "legislative facts" in formulating a rule of law can seriously undermine the integrity of the law when done on the basis of a less than thorough exploration and examination of the facts and the source and meaning of the facts. Seizing on an empirical study or two is not likely to provide a solid foundation on which a rule of law may be formulated.

To the extent that rules of law are supposed to reflect human experience and expectations, they may, of course, be shaped by empirical data that accurately describe the realities of human experience and expectations. But here the conclusions that Chief Justice Zimmerman draws from the studies referred to in the briefs are highly tenuous because they simply fail to deal with the variety of circumstances with which the law must be concerned. In my view, the data he refers to are not adequate to determine the duty of care a reasonable person should be held to by the law. The existence of a duty of reasonable care depends in part on the extent to which a reasonable person can foresee that his acts may create a significant likelihood of causing harm to others. Ordinarily, a remote possibility of causing harm to others is not enough to establish a duty of due care.

Clearly, there is a vast difference between the possibility of theft when keys are left in the ignition of a car located in an exclusive neighborhood and when the keys are left in the ignition of a car located in a run-down downtown area frequented by groups of persons known to have a higher propensity for stealing cars than the population as a whole. Likewise, briefly leaving keys in the ignition of a car in a remote rural area where other persons almost never appear is entirely different from leaving a car in an area near a high school where truant teenagers are known to go joy riding in stolen automobiles. In short, the statistics cited by the Chief Justice lump all different types of situations together. If the law is to reflect the kinds of reasonable assumptions that people make about the consequences of their actions, the law cannot formulate a rule of law on generalized empirical data that do not make the

kinds of distinctions the law must make. The point is that the statistics cited by the Chief Justice do not differentiate the various kinds of circumstances about which the law must make reasonable judgments as to the likelihood of harm. Both of the studies he relies on, even if valid statistical conclusions, have little value in formulating a general rule of law with respect to the duty the law ought to impose on a person who leaves keys in the ignition of a car.

The factual allegations in the instant case, if proved, are sufficient to show that a reasonable person exercising due care could foresee a substantial likelihood of theft of an automobile and the possibility of harm to a third person. Plaintiffs' allegations are that defendant customarily left keys in the ignitions of its automobiles in areas open to the public, that there were frequent prior thefts as a result of that practice, and that those thefts could foreseeably lead to the injury of another. Of course, a jury will have to sort this all out.

The Chief Justice's concern that the position of the majority will lead to a "nightmare for counsel, trial courts, and appellate courts" is, in my view, unwarranted. Adopting his position would, I believe, create the real nightmare because every case in which someone was injured by one driving a stolen vehicle in which the ignition keys had been left would go to trial. In many such cases, juries would simply find, after all the time and effort put into preparing and trying the case, that there was no proximate cause because the injury was unforeseeable.

Under the law stated in the majority opinion, there must be a *reasonable* foreseeability of injury before the defendant could be forced to trial. Whether there is such a "reasonable foreseeability" depends not on a trial judge's "intuition," as Chief Justice Zimmerman suggests, but rather on the common experience of the community in similar circumstances. It is a reasonable burden to require a plaintiff to show special circumstances—i.e., a factual foundation to establish that in the particular circumstances it was reasonably foreseeable, not just a possibility, that harm would result from a defendant's leaving keys in the ignition. Such a require-

ment demands more than wholly unsubstantial allegations of fact. Utah R.Civ.P. 11. If some unmeritorious case does make it past the pleading stage, a motion for summary judgment should be sufficient to pierce the pleadings and decide whether the case warrants a trial.

ZIMMERMAN, Chief Justice, concurring in the result:

I join in the majority's disposition of this case, but I write separately to warn of the inevitable consequences occasioned by the court's careful effort not to overrule *Rollins v. Petersen,* 813 P.2d 1156 (Utah 1991), and *Nellsch v. Westland Ford, Inc.,* 646 P.2d 736 (Utah 1982) (per curiam), to the extent that those cases insulate those who leave keys in cars from liability for injuries resulting from a thief's subsequent operation of the car.

Although the majority pretends to adhere to that traditional rule, today's ruling allows any plaintiff who creatively alleges facts beyond the "run-of-the-mill" key-in-the-ignition situation to get to a jury for a determination of duty and proximate cause. By allowing plaintiffs to plead their way around the traditional rule, the court is creating a nightmare for counsel, trial courts, and appellate courts. Lawyers will be put to the test of guessing what particular circumstances must be pleaded to survive a rule 12(b)(6) motion, trial judges will have to determine which of the many facts relied upon by the majority in the present case are necessary to satisfy our legal tests, and this court and the court of appeals will be faced with a predictably large number of appeals in which trial judges will have taken different views of the matter on similar facts. I see no real purpose to be served by this procession of difficulties.

To avoid these problems and because empirical facts have come to our attention—facts to which the majority only elliptically alludes but which seem to determine the outcome of this case—suggesting that the traditional rule articulated in *Rollins* and *Nellsch* rests on unsound factual premises, I would overrule those cases and hold that any person who leaves a key in the ignition of a vehicle left in a public place is liable to anyone injured as a proximate result of the operation of the vehicle by a thief.

Some background is in order. As the majority recognizes, the traditional rule is grounded on the premises that (i) a car owner owes no duty to third persons injured by a thief and (ii) theft constitutes an independent, intervening criminal act that breaks the chain of causation between the negligence of the car owner and the plaintiff's injuries. However, because the validity of both of these legal premises hinges upon factual assumptions about the unforeseeability of the theft and of the thief's subsequent negligent operation of the car, *cf. Steffensen v. Smith's Management Corp.,* 862 P.2d 1342, 1346 (Utah 1993), factual assumptions that the majority appears to reject, the majority is led to conclude that plaintiffs should be given an opportunity to present evidence of foreseeability and, thereby, to prove that both duty and proximate causation exist in this case.

In arriving at this conclusion, the majority relies on empirical or "legislative" facts which suggest that when keys are left in a car, it *is* foreseeable that the car will be stolen and that the thief will negligently operate the car, causing injury to third persons.[1] There is little doubt that the majority

---

1. Legislative facts are those which inform policy-making decisions, as opposed to adjudicative facts which are facts distinctive to a particular case. Robert E. Keeton, *Judging* 38–39 (1990); *see also* Utah R.Evid. 201 advisory committee's note. Stated another way, legislative facts are used to craft general rules of law, while adjudicative facts are used only to decide the particular case on trial and not for a more general purpose. Keeton, *Judging,* at 38–39. *See generally* Robert E. Keeton, *Legislative Facts and Similar Things: Deciding Disputed Premise Facts,* 73 Minn.L.Rev. 1 (1988).

It is legitimate for a court to consider legislative facts without being restricted in any way by the rules of evidence. Utah R.Evid. 201 advisory committee's note. The propriety of considering legislative facts in making policy decisions has been explained as follows:

There is always a danger in the superficial sociological musings of lawyers and judges who must perforce be relatively ignorant of the realities underlying the diverse situations with which they must deal and which they must try to understand. Yet, whether we explore the economic, political or social settings to which

has done this, as evidenced by its seemingly intuitive statements that "[o]bviously a vehicle is more likely to be stolen if it is unlocked and its key is in its ignition" and "[o]ther courts have observed that thief-driven vehicles often collide with third parties, causing injury and death." Then, purporting to adhere to the traditional rule against liability, the court concludes that in the instant case, "the theft of the car and its negligent operation may have been foreseeable."

I do not mean to criticize the majority's rejection of the factual assumptions underlying the traditional rule, but I do take issue with its failure to openly explain that rejection and with its refusal to acknowledge that such rejection necessarily requires discarding the traditional rule for both legal and practical reasons, as I will explain.

In their brief before this court, plaintiffs cite several studies which, while not part of the record on appeal, present legislative facts which we can legitimately consider in formulating the rule of law appropriate to these sorts of situations. These studies reveal that (i) a car with keys left in it is much more likely to be stolen than a car without keys left in it, and (ii) the accident rate for stolen vehicles is much higher than the accident rate for the general public. Specifically, one study showed that in approximately twenty-five percent of all vehicle thefts, the ignition key was left in the vehicle. National Inst. of Law Enforcement and Crim.Just., U.S. Dep't

of Just., *Preliminary Study of the Effectiveness of Auto Anti–Theft Devices* 4–5 (1975), *cited in Hill v. Yaskin,* 75 N.J. 139, 380 A.2d 1107, 1110 (1977) (noting that if one were to take into account those cases where there were no marks on the ignition lock, inferentially showing use of a key, the figure could rise to fifty-seven percent). That same study showed that the accident rate for stolen vehicles is at least forty-seven times the accident rate for the general public. *Id.* at 29. In addition, a 1966 study showed that about twenty-four percent of stolen cars were involved in accidents that year. Criminal Div., U.S. Dep't of Just., *National Auto Theft Prevention Campaign Pamphlet* (1968), *cited in Gaither v. Myers,* 404 F.2d 216, 222 (D.C.Cir.1968).

Although these statistics were cited in plaintiffs' brief and were argued to the court, defendant has made no effort to refute them. Defendant has not cited, nor have I found in my independent research, any evidence which contradicts these statistics or which suggests that they are no longer valid. Assuming they are a correct picture of how the world works,[2] these statistics are very powerful and fundamentally undermine the assumptions upon which the traditional rule rests. They suggest that the existing state of the law is completely inconsistent with the actual increased risks associated with leaving keys in cars. For that reason, it is logically impossible to continue to sustain the traditional rule.[3]

the law must be applied explicitly, or suppress our assumptions by failing to take note of them, we cannot apply the law in a way that has any hope of making sense unless we attempt to visualize the actual world with which it interacts—and this effort requires judicial notice to educate the court.

A court's power to resort to less well known and accepted sources of data to fill in the gaps of its knowledge for legislative and general evidential hypothesis purposes must be accepted because it is essential to the judicial process.

*Bulova Watch Co. v. K. Hattori & Co.,* 508 F.Supp. 1322, 1328 (E.D.N.Y.1981).

2. Interestingly, the United States Department of Transportation has apparently recognized the chain of causation these studies evidence. It has enacted a regulation requiring certain vehicles to be equipped with a warning device which is activated whenever the key has been left in the ignition and the driver's door is opened. 49

C.F.R. § 571.114(S4.5) (1994). The stated purpose of this requirement is "to reduce the incidence of crashes resulting from unauthorized operation of a motor vehicle." *Id.* at § 571.114(S1).

3. I am not suggesting that these studies are so solid in their contradicting the factual assumptions underlying the traditional rule that its being discarded is inevitable. I have elsewhere noted the care with which courts should approach legislative facts. *State v. Young,* 853 P.2d 327, 412 (Utah 1993) (Zimmerman, J., concurring and dissenting). However, given the absence of contradictory studies, defendant's failure to even challenge the studies cited by plaintiffs, and the very restrictive nature of the traditional rule, I think the court is justified in relying on these studies in rejecting the traditional rule. *Cf.* Keeton, *Judging* at 42.

In operation, the traditional rule will be an empty promise after today's ruling because the effect of the court's ruling is to enable plaintiffs, through artful pleading, to avoid the traditional rule announced in *Rollins* and *Nellsch.* If we are going to bring the law into conformity with the empirical evidence, as the majority seems intent on doing, I would do so candidly. I would hold, as a matter of law, that when keys are left in the ignition of a vehicle in a public place, it is *always* foreseeable that the vehicle will be stolen and that a third person will be injured as a result of the thief's negligence. I would therefore overrule *Rollins* and *Nellsch* to the extent that they hold otherwise. This would avoid the prospect of the bench and bar struggling for years with trying to reconcile our ruling today with a traditional rule that is, de facto, left only as a pleading obstacle for the unwary and a source of work for appellate judges.

RUSSON, Justice, dissenting:

I respectfully dissent. The majority opinion expands civil liability of car owners beyond the parameters of the "unusual circumstances" exception in *Nellsch v. Westland Ford, Inc.,* 646 P.2d 736, 737 (Utah 1982) (per curiam). Prevailing law, as well as public policy, dictates that we should not expand liability in this case.

"The first prerequisite of a valid negligence claim is the existence of a duty of care owed by defendant to the plaintiff." *C.T. v. Martinez,* 845 P.2d 246, 247 (Utah 1992). The court has already held that a Utah statute making it a misdemeanor to leave the keys in the ignition of an unattended vehicle does not create a duty in the vehicle owner toward a third person injured by the owner's stolen vehicle. *Rollins v. Petersen,* 813 P.2d 1156, 1164 (Utah 1991). As to the existence of a common law duty of care, it is the general rule in Utah that the owner of a vehicle will not be liable for injury sustained by a third person in an accident involving the owner's stolen vehicle. *Nellsch,* 646 P.2d at 737.

One having a lawful right to the possession of ... an automobile, although negligent in leaving the keys therein, has no duty to respond in damages caused by a thief who takes it and runs into a third party's vehicle. In all but the most unusual circumstances, there is no proximate cause between the negligence of the one having such right to possession and that of a thief whose negligent driving is an independent, intervening cause of the damage.

*Id.* (footnote omitted). While the *Nellsch* opinion did not elaborate on the "unusual circumstances" under which the court would allow liability, Utah law and the law of a majority of other jurisdictions lead to the inescapable conclusion that those "unusual circumstances" do not exist in the case before us.

The majority opinion recognizes that the existence of a duty in this case can be found only if both the theft and the accident were foreseeable by Middlekauff. As Justice Traynor stated in *Richards v. Stanley,* 43 Cal.2d 60, 271 P.2d 23 (1954), "[I]t has generally been held that the owner of an automobile is under no duty to [injured] persons ... in the absence of facts putting the owner on notice that the third person is incompetent to handle it." *Id.* at 26. Although *Nellsch* did not discuss the issue of foreseeability of the accident, that issue was discussed by the case relied upon in the *Nellsch* opinion, *Shafer v. Monte Mansfield Motors,* 91 Ariz. 331, 372 P.2d 333 (1962):

Plaintiffs contend that the risk of injury to them was within the range of defendant's apprehension because there was a great frequency of joy riding in the particular area in which the defendant's car was parked and there is a higher frequency of accidents occurring when cars are driven by joy riders or car thieves. However, no evidence was introduced to establish these facts and ... [t]his is not the type of fact of which the trial court may properly take judicial notice....

*Id.* at 335.

The majority does not point to any facts in this case which would establish that Middlekauff could have foreseen that there was an unreasonable risk of injury to the Cruzes as a result of Middlekauff's actions. Rather, the majority would impose liability on Middlekauff because "[o]ther courts have ob-

served that thief-driven vehicles often collide with third parties, causing injury and death." The statistical data relied on by the majority is no different from the statistical data about "joy riders or car thieves" rejected in *Shafer.* Because *Nellsch* cites *Shafer* without any elaboration, we can assume that this type of unsubstantiated fact was not one of the "unusual circumstances" contemplated by *Nellsch.*

The majority also looks at the length of time between the theft and the injury as indicating that Middlekauff should have foreseen the injury to the Cruzes. However, whether the accident occurred as the thief was driving out of the parking lot or a day later, the fact remains that there was no indication that Middlekauff could have foreseen the injury to the Cruzes. Not only was there no evidence to suggest that Middlekauff was aware in advance that the accident would happen, there is even less of a likelihood that Middlekauff would be aware of when an accident would occur.

The majority opinion would lead to the unfortunate result that owners whose cars are stolen by unidentified thieves have a greater obligation to injured persons than owners who loan their cars to identified borrowers. Generally, in the absence of a statute, vehicle owners are not liable for the negligence of persons using their vehicles with permission. *See Bryant v. Gilmer,* 97 N.M. 358, 639 P.2d 1212, 1214 (App.1982). It is only where vehicle owners *negligently entrust* their vehicles to others that liability is found. *See Henderson v. Professional Coatings Corp.,* 72 Haw. 387, 819 P.2d 84, 90–91 (1991); *Lopez v. Langer,* 114 Idaho 873, 761 P.2d 1225, 1227 (1988). The majority assumes that everyone who steals a car drives negligently. In contrast, the law does not assume that every person who borrows a car drives negligently. Just as car lenders will not be liable absent a showing that their entrustment was in itself negligent, owners of stolen cars should not be held liable unless the negligence of the thief was foreseeable by the owner. At the very least, we should strive for uniformity in the application of liability to car owners who loan their cars and those whose vehicles are stolen. The

majority opinion results in a more protective standard for car lenders than for owners of stolen cars who, unlike the lenders, do not choose those who will drive their cars.

Further, by extending liability for "unusual circumstances" to areas other than cases where the accident is foreseeable, the majority opinion could lead to the unfavorable result that people or businesses located in higher-crime areas or areas more prone to theft would potentially have a greater amount of liability for theft-related accidents than those in lower-crime areas. Even more problematic is the potential to extend liability for the acts of third persons to people other than vehicle owners. For example, under an "unusual circumstances" analysis similar to that propounded by the majority, a homeowner in a high-crime area who leaves her front door unlocked could be liable for injury to a third person resulting from the theft of a kitchen knife.

In reviewing the facts in a light most favorable to plaintiffs, at most the court may conclude that Middlekauff's negligence may have made the theft, not the accident, foreseeable. To support a finding of Middlekauff's liability, the Cruzes rely on the facts that (1) Middlekauff customarily left keys in vehicle ignitions; (2) there was an unimpeded and inconspicuous exit from Middlekauff's lot onto a public street; (3) Middlekauff lacked adequate surveillance or security for the vehicles; and (4) there had been several prior thefts of Middlekauff vehicles. These facts, however, go to the foreseeability of the theft—not to the foreseeability of an unreasonable risk of injury to the Cruzes as a result of Middlekauff's actions. Evidence that Middlekauff's negligence may have led to the theft is not enough for the court to find a duty in this case. The court should limit the "unusual circumstances" to instances where injury to a third person was clearly foreseeable by the defendant. I would reverse.