**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 10 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

TANYA COPIER, deceased, by and
through Bree Renee Lindsey, her personal
representative,

Plaintiff-Appellant,

v.

SMITH & WESSON CORP.,

Defendant-Appellee.

No. 96-4051
No. 97-4187

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 95-CV-723)

---

Russell C. Fericks of Richards, Brandt, Miller & Nelson, Salt Lake City, Utah (John J. Flynn, Salt Lake City, Utah, with him on the brief), for Plaintiff-Appellant.

Anne G. Kimball of Wildman, Harrold, Allen & Dixon, Chicago, Illinois (Kenneth M. Gorenberg of Wildman, Harrold, Allen & Dixon, Chicago, Illinois, and H. James Clegg of Snow, Christensen & Martineau, Salt Lake City, Utah, with her on the brief), for Defendant-Appellee.

---

Before **EBEL, HOLLOWAY,** and **MURPHY**, Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

Plaintiff-Appellant, Tanya Copier, by and through her daughter, Bree Renee Lindsey,[1] appeals from the district court's final order denying her motion to amend and confirming dismissal of her complaint. She also asserts as a major part of her appeal that error occurred in the district judge's denial of her motion to certify a question of state law to the Utah Supreme Court -- specifically, whether Utah law would include the manufacturing of firearms within the class of activities constituting ultrahazardous activities. She also moves this court to certify the question directly to the Utah Supreme Court. The district judge's views on the insufficiency of the complaint were expressed in his unpublished Memorandum Opinion and Order. App. at 125-135. We affirm the judgment of the district court and decline to certify the question.

# I

The relevant facts of this case are not in dispute. Ms. Copier's ex-husband shot her on March 21, 1991, with a .38 caliber firearm manufactured by defendant-appellee, Smith & Wesson Corp. The shooting, which led to Eldon Copier's conviction for attempted criminal homicide, left Ms. Copier a paraplegic. Appendix ("App.") at 2 (complaint); id. at 12-13 (Smith & Wesson's Memorandum of Law in Support of Defendant's Motion to Dismiss).

---

[1]Due to the death of Ms. Copier following the filing of the present action in Utah state court, Bree Renee Lindsey, Ms. Copier's representative, has been substituted as the plaintiff-appellant. These and other procedural developments since commencement of this action are detailed below.

Ms. Copier filed her original complaint herein on March 20, 1995 in Utah state court against Smith & Wesson. Her theory of legal liability was based on the tort doctrine of ultrahazardous activity, arguing in particular that since handguns are manufactured to injure or kill people, and since it is a statistical certainty that some handguns are actually used to injure or kill people, the handgun manufacturer should bear strict liability for the resulting damages. Id. at 3 (complaint). She invoked the doctrine of ultrahazardous activity articulated in the Restatement (Second) of Torts §§ 519 and 520.

Following the filing of her complaint in March 1995 in state court, Ms. Copier died as a result of her injuries on June 24, 1995. Id. at 125; Aplt. Status Memorandum at Tab 2, p. 2. Smith & Wesson subsequently removed the case to federal court on August 7, 1995. App. at 5 (notice of removal). However, no attempt was made to seek an order substituting a party for Ms. Copier pursuant to Fed. R. Civ. P. 25(a).

On motion of Smith & Wesson, the district court dismissed Ms. Copier's complaint on December 13, 1995, reasoning that its role was to follow, not expand, Utah law, and that Ms. Copier's cause of action was not viable under current Utah law. App. at 128-29 (district court's Memorandum Opinion and Order). The district court denied Ms. Copier's request for certification to the Utah Supreme Court. Id. at 134. The judge additionally noted in his order that counsel for plaintiff had alerted the court to Ms. Copier's death and that counsel further indicated that if the court denied the motion to dismiss, the complaint would be amended to add a claim for wrongful death and to substitute Ms. Copier's daughter as the

3

party-plaintiff. Id. at 125 (Memorandum Opinion and Order, p. 1, n.1).

Following dismissal and then the denial of plaintiff's motion for amendment or for relief from order, Ms. Copier's counsel filed a notice of appeal to this court in February 1996. Id. at 163. Ms. Copier's death was not addressed in the parties' appellate briefs nor was her death discussed during oral argument. Discovering Ms. Copier's death after the case was submitted, we entered an order sua sponte on March 13, 1997, abating the appeal to permit proper substitution of a party for Ms. Copier, pursuant to Fed. R. App. P. 43(a). Ms. Copier's counsel then filed in this court a motion for substitution of party and for remand. On April 22, we entered an order substituting Bree Renee Lindsey, daughter and personal representative of Ms. Copier, as plaintiff-appellant. Our order also vacated the district court's judgment dismissing Ms. Copier's complaint and remanded the case to the district court for consideration of a motion to amend the complaint to include a wrongful death claim, which counsel had indicated would be made.

Plaintiff subsequently filed her motion to amend with the district court, seeking to add as a defendant Eldon Copier, the assailant, and to add a claim for wrongful death. Aplt. Status Memorandum at Tab 8, p. 2. The district court denied the motion to add a defendant, but granted plaintiff's request to add the wrongful death claim. Id. Smith & Wesson again filed a motion to dismiss pursuant to Rule 12(b)(6), which the district court granted on October 7, 1997, without a hearing. In its order dismissing the case, the judge noted that plaintiff acknowledged that the amended complaint raises the same legal issues as the

4

original complaint and that plaintiff intended to file an immediate appeal. The judge relied upon the same reasons for dismissal which he previously detailed in his first order of dismissal.

Plaintiff again filed a notice of appeal. Because the legal issues remain the same as those initially argued, we denied plaintiff's request for further oral argument, but we provided the parties with the opportunity to submit supplemental briefs addressing these issues. Plaintiff states in her supplemental brief at 2 that no new controlling decisions have been rendered by the Utah Supreme Court or the Utah Court of Appeals regarding these issues since the original appellate briefs were filed, but that the general issue of liability "for the ultrahazardous conduct of manufacturing and marketing handguns to the general marketplace remain an important topic of public policy debate and advocacy around the country."

## II

### A

Plaintiff-appellant places heavy emphasis on her request for certification to the Utah Supreme Court, see Brief for Appellant at 2, in addition to the merits of her ultrahazardous activity theory of liability. Id. at 13. We treat the merits of her liability theory first. We review a dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) de novo. Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 854 (10th Cir. 1996). Moreover, "the obligation of responsible appellate review and the principles of a cooperative judicial federalism underlying Erie

5

require that courts of appeals review the state-law determinations of district courts <u>de novo</u>." <u>Salve Regina College v. Russell</u>, 499 U.S. 225, 239 (1991).

Utah law imposes strict liability on one who carries on an abnormally dangerous activity for harm resulting from the activity. <u>Walker Drug Co., Inc. v. La Sal Oil Co.</u>, 902 P.2d 1229, 1233 (Utah 1995); Restatement (Second) of Torts § 519 (1976).[2] The factors to be considered in determining whether an activity is abnormally dangerous are:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

<u>Walker Drug Co., Inc. v. La Sal Oil Co.</u>, 902 P.2d at 1233(citing Restatement (Second) of Torts § 520 (1976)). Consideration of these factors leads us to conclude that Utah law does not support Ms. Copier's theory of liability of Smith & Wesson.

None of the above factors is implicated by the <u>manufacturing</u> of handguns, as opposed to the use -- or rather, the <u>misuse</u> -- of handguns. For example, in <u>Walker Drug</u>, the plaintiffs brought suit because gasoline had leaked from the defendants' gas stations and contaminated the plaintiffs' property. In evaluating the six factors, the Utah Supreme Court considered the

---

[2]The genesis of the ultrahazardous activity doctrine was the seminal case of <u>Rylands v. Fletcher</u>, L.R. 3 H.L. 330, [1861-73] All E.R. Rep. 1 (1868), which is discussed at length in 3 Harper, James & Gray, <u>The Law of Torts</u> §§ 14.2-14.5.

danger that would result from the operation of the gas stations -- that is, the possibility of leakage of gasoline. It was held that the operation of the gas stations was not an abnormally dangerous activity; they were located in an area of the city where their operation was common, appropriate and of significant value to the community. Id. at 1233.

In Robison v. Robison, 394 P.2d 876, 877 (Utah 1964), the Utah Supreme Court held that the determination of whether the ultrahazardous activity doctrine applied as to injury caused by rock fragments hurled during use by the defendants of dynamite for blasting purposes depended on the circumstances. The court focused on the use of dynamite, and not its manufacture. In the instant case, however, Ms. Copier was harmed not by the manufacturing of the Smith & Wesson .38, but by the use of it to shoot her. This distinction is significant, because Ms. Copier's argument essentially collapses all uses of guns into one purpose, which she contends is to injure or kill people. However, Ms. Copier ignores a number of legitimate uses, including self-defense, home protection, and use by law enforcement officers.

We further note that the one case we have found that imposed strict liability upon a handgun manufacturer focused on the unique nature of the firearm in that case, a "Saturday Night Special," which the court characterized as a gun whose "chief 'value' . . . is in criminal activity, because of its easy concealability and low price." See Kelley v. R.G. Industries, Inc., 497 A.2d 1143, 1158 (Md. 1985). Kelley provides little support to Ms. Copier, however, since it actually rejected the application of the ultrahazardous activity doctrine to

7

firearms in general but limited its holding of liability specifically to "Saturday Night Specials."[3]  Id. at 1147, 1154, 1159. Here, Ms. Copier was shot by a standard .38 caliber pistol and there is no allegation that the gun was easily concealable and designed chiefly for use by criminals.

Ms. Copier relies heavily on several scholarly articles which, she contends, advocate the extension of the ultrahazardous activity doctrine to the manufacturing of firearms.  See,

---

[3]We note, moreover, that the Maryland legislature has since repudiated the liability holding in Kelley with respect to "Saturday Night Specials."  See Md. Ann. Code art. 27 § 36-I(h).  Additionally, other jurisdictions which have considered the issue have rejected the extension of the ultrahazardous activity doctrine to the manufacturing or sale of firearms. See, e.g., Hamilton v. Accu-Tek, 935 F. Supp. 1307, 1324 (E.D.N.Y. 1996) (rejecting the application of the doctrine because it was not an "improper use of land");     King v. R.G. Industries, Inc., 451 N.W.2d 874 (Mich. Ct. App. 1990) (manufacturer is not liable for criminal misuse of handgun);  Delahanty v. Hinckley, 564 A.2d 758, 761 (D.C. 1989) (holding that it is the use, not marketing, of firearms that is dangerous);  Addison v. Williams, 546 So.2d 220, 223 (La. Ct. App. 1989) (rejecting application of the doctrine to the manufacturing of handguns); Diggles v. Horwitz, 765 S.W.2d 839, 841 (Tex. App. 1989) (noting that the "manufacture or sale of a handgun has not been recognized as an ultrahazardous activity in Texas");  Armijo v. Ex Cam, Inc., 843 F.2d 406 (10th Cir. 1988) (applying New Mexico law and rejecting application of doctrine to manufacturing of handguns);  Knott v. Liberty Jewelry & Loan, Inc., 748 P.2d 661, 664-665 (Wash. App. 1988) (rejecting the application of the doctrine to the manufacturing and sale of firearms); Caveny v. Raven Arms Co., 665 F. Supp. 530, 534-35 (S.D. Ohio 1987) (rejecting Kelley), aff'd, 849 F.2d 608 (6th Cir. 1988) (table);  Moore v. R.G. Industries, Inc., 789 F.2d 1326, 1328 (9th Cir. 1986) (rejecting strict liability claim against handgun manufacturer because manufacture of handguns is not ultra-hazardous activity; harm results from use, not existence, of handgun);  Coulson v. DeAngelo, 493 So.2d 98, 99 (Fla. Dist. Ct. App. 1986) (per curiam) (same);  Burkett v. Freedom Arms, Inc., 704 P.2d 118, 121 (Or. 1985) (same); Perkins v. F.I.E. Corp. , 762 F.2d 1250, 1266 (5th Cir. 1985) (applying Louisiana law, holding that marketing of handguns is not an ultrahazardous activity, and reversing Richman v. Charter Arms Co., 571 F. Supp. 192 (E.D. La. 1983)); Martin v. Harrington & Richardson, Inc., 743 F.2d 1200, 1203-04 (7th Cir. 1984) (Illinois law).

8

e.g., Joi Gardner Pearson, Make It, Market It, and You May Have to Pay for It: An Evaluation of Gun Manufacturer Liability for the Criminal Use of Uniquely Dangerous Firearms in Light of *In re 101 California Street*, 1997 BYU L. Rev. 131 (1997) (in cases involving assault-style firearms or other firearms particularly attractive to criminals, where criminal use is especially foreseeable by the manufacturer, the manufacturer should be held strictly liable for criminal misuse);  Virginia E. Nolan & Edmund Ursin, The Revitalization of Hazardous Activity Strict Liability, 65 N.C. L. Rev. 257 (1987) (although not addressing liability of gun manufacturers in particular, the article advocates the policy of cost spreading; the potentially overwhelming cost of injury may be needless to the person injured, since the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business, a policy which has moved from a status of questionable legitimacy to wide acceptance as a justification for strict products liability);  Andrew O. Smith, Comment, The Manufacture and Distribution of Handguns as an Abnormally Dangerous Activity , 54 U. Chi. L. Rev. 369 (1987) (although recognizing that courts reject the notion, the economics of handgun injuries support the application of the abnormally dangerous activity doctrine to the manufacturing of handguns, especially since the manufacturers inject products into commerce "intended to facilitate the infliction of grave personal injury");  Paul R. Bonney, Manufacturers' Strict Liability for Handgun Injuries: An Economic Analysis, 73 Geo. L.J. 1437 (1985) (recognizing that no court has allowed recovery against a manufacturer for injuries caused by a properly functioning handgun, but outlining the desirability of such a

9

cause of action and suggesting that handgun manufacturers should, in fairness, bear the enormous costs of handgun-related injuries). We are not persuaded that the articles support plaintiff-appellant's position that Utah law, or a discernible trend in its decisions, indicate the adoption of her theory.[4]

With respect to the opinion in In re 101 California Street, No. 959316 (Cal. Super. Ct. 2d Dep't Apr. 10, 1995), which provides the basis for Pearson's article, at least two courts have declined to follow its analysis, noting that while the case may have been correctly decided under its particular facts, it was actually based on a California statute prohibiting the sale, advertising or possession of certain assault weapons, including the specific handgun involved therein. See Moss v. Wolohan Lumber Co., 1995 WL 348144 (N.D. Ill. 1995); Casillas v. Auto-Ordnance Corp., 1996 WL 276830 (N.D. Cal. 1996). Since no similar statute existed regarding the type of weapons involved in Moss or Casillas, the courts distinguished In re 101 California Street, and granted summary judgment in favor of the manufacturers.

Ms. Copier's argument, carried to its logical extension, would suggest that the manufacturing of any product that is significantly misused and has great potential for injuring or killing persons should be considered as an ultrahazardous activity. Alcohol production, for example, might be so considered because in any given year, there is a statistical certainty

---

[4]A reply supplemental memorandum was filed by plaintiff, which presents additional articles as support for plaintiff's theory of liability. These supplemental studies, however, do not alter our thinking on this issue.

that thousands of people will be killed in alcohol-related accidents.  Yet, the Utah Supreme

Court has refused to apply strict liability principles to alcohol providers.  See Horton v. Royal

Order of the Sun, 821 P.2d 1167, 1169 (Utah 1991).

In sum, we are convinced that under the state of decisional law in Utah, and of

decisions generally, the complaint premised on the ultrahazardous activity doctrine was

properly dismissed here.

**B**

We review the district court's decision not to certify the question of state law for

abuse of discretion.  Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988).  A district

court abuses its discretion when it renders "an arbitrary, capricious, whimsical, or manifestly

unreasonable judgment."  FDIC v. Oldenburg, 34 F.3d 1529, 1555 (10th Cir. 1994).

Certification is a useful procedure which the Supreme Court has used or commended

several times.  See, e.g., Arizonans for Official English v. Arizona, 117 S. Ct. 1055, 1073-75

(1997); Zant v. Stephens, 456 U.S. 410, 416-17 (1982);  Lehman Brothers v. Schein, 416

U.S. 386, 391-92 (1974);  Clay v. Sun Ins. Co., 363 U.S. 207, 212 (1960).  But we have

noted that just because a new state law question is raised, "[c]ertification is not to be

routinely invoked whenever a federal court is presented with an unsettled question of state

law."  Armijo, 843 F.2d at 407.  The Supreme Court has instructed us that

> In the absence of some recognized public policy or defined principle guiding
> the exercise of the jurisdiction conferred, which would in exceptional cases
> warrant its non-exercise, it has from the first been deemed to be the duty of
> the federal courts, if their jurisdiction is properly invoked, to decide questions

11

of state law whenever necessary to the rendition of a judgment.

Meredith v. City of Winter Haven, 320 U.S. 228, 234 (1943).

In arguing that the district court abused its discretion, plaintiff-appellant notes that this case was originally filed in state court, only to have it removed to federal court based on diversity jurisdiction. She claims that she is entitled to her day in a Utah court to test the domain of Utah public policy, "as reflected in the ever evolving doctrine of tort law as bolstered by [the] growing consensus of the horrendous cost to society from handgun distribution . . . ." Appellant's Supplemental Memorandum of Points and Authorities at 6. She cites the Utah Constitution, Article I, Section 11, which says the courts of the State "shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law."

There are two problems with this argument for plaintiff. First, insofar as this provision of the State constitution is in conflict with the removal statutes, 28 U.S.C. §§ 1332 and 1441, then plaintiff-appellant's state rights must yield to the right of diverse defendants under the removal statutes, for "This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, Section 2. And under the diversity statutes the federal courts have the duty to decide questions of state law even if difficult or uncertain, and denial of the opportunity for decision by a federal court in a proper diversity case "would thwart the purpose of the jurisdictional

12

act." Meredith, 320 U.S. at 235.

Second, we are unable to discern when a federal district court, under plaintiff-appellant's argument, would ever be able to deny certification in a Utah case that had been removed if there were any possible argument that there is uncertainty on the Utah law. Any plaintiff seeking redress under Utah law whose case was subsequently removed to federal court would be able to raise the same argument Ms. Copier has, and if the district court could not rule out even the slightest degree of uncertainty in the law of the state, it could never deny certification. Such a rule would be clearly wrong. See Lehman Brothers v. Schein, 416 U.S. 386, 390-91 (1974) ("We do not suggest that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory.").

Turning to the issue presented for possible certification here, plaintiff-appellant contends that Cruz v. Middlekauff Lincoln-Mercury, Inc., 909 P.2d 1252 (Utah 1996), is proof that Utah is willing to expand the boundaries of its tort law to cover situations such as hers. Brief for Appellant at 14. However, the district court also had before it Armijo, in which a panel of this court affirmed the denial of certification to the New Mexico Supreme Court of substantially the same issue as the one raised in this case. Significantly, Armijo had surveyed federal and state law and concluded that there simply was no indication that New Mexico would recognize a cause of action such as the plaintiff alleged, and that there is a clear trend against recognizing such a claim.

We do not believe that the district court abused its discretion. Cruz is simply not on

13

point. In <u>Cruz</u>, the plaintiff was proceeding under a negligence theory, and thus the case's central holding focuses on the possible duty that a car dealership owed to the public and the foreseeability of injury to third parties stemming from its decision to leave car keys in the ignitions. Even more importantly, the plaintiff was suing the car dealership, not the car manufacturer. We do not see how <u>Cruz</u> can be read to suggest that Utah might expand the ultrahazardous activity doctrine to cover manufacturers of handguns.

Therefore, we hold that the district court did not abuse its discretion in denying certification to the Utah Supreme Court of the question of liability asserted here against defendant Smith & Wesson.

## III

We next consider whether we should certify this question to the Utah Supreme Court directly. Utah R. App. P. 41(a) states:

> The Utah Supreme Court may answer a question of Utah law certified to it by a court of the United States when requested to do so by such certifying court acting in accordance with the provisions of this rule if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain.

Thus, there is a procedural mechanism for certification to the State Court which we may consider using. However, we note that a necessary but not controlling component is the difficulty in determining the local law. Cf. <u>Lehman Brothers v. Schein</u>, 416 U.S. 386, 390 (1974) ("[T]he mere difficulty in ascertaining local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit."). <u>Lehman Brothers</u>, of course, discussed abstention as well as certification, but the opinion there further noted: "We do not suggest

14

that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory." Id. at 390-91. The Supreme Court's recent opinion in Arizonans for Official English teaches that "[n]ovel, unsettled questions of state law, however, not 'unique circumstances,' are necessary before federal courts may avail themselves of state certification procedures." 117 S. Ct. at 1074-75.

While no Utah court has rendered a decision on the precise issue in question, we do not believe there is unusual difficulty in deciding the state law question or a likelihood that plaintiff's theory of liability would be adopted by the Utah courts. We noted above why Cruz is not applicable to this case and our independent analysis of Utah law persuades us that the Utah Supreme Court would not expand its ultrahazardous activity doctrine to encompass Ms. Copier's claim. No Utah decision that we have found has considered manufacturing to be the type of activity that triggers the ultrahazardous activity doctrine. We therefore decline to certify the question to the Utah Supreme Court and the judgment below is

**AFFIRMED.**

15