STATE of Utah, Plaintiff and Appellee,

v.

Brent ZIEGLEMAN and Michael McNaughton, Defendants and Appellants.

No. 940448–CA.

Court of Appeals of Utah.

Oct. 26, 1995.

W. Andrew McCullough, McCullough, Jones & Ivins, Orem, for Appellant.

Todd A. Utzinger, Assistant Attorney General, Jan Graham, State Attorney General, Salt Lake City, for Appellees.

Before DAVIS, Associate P.J., and BILLINGS and WILKINS, JJ.

## OPINION

WILKINS, Judge:

Brent Ziegleman appeals from an interlocutory order denying his motion to suppress a kilogram of cocaine found in his car. He is charged with possession of a controlled substance with intent to distribute, a second degree felony, in violation of section 58–37–8(1)(a)(iv) of the Utah Code. We reverse.

## BACKGROUND

We recite the facts adduced at the suppression hearing in the light most favorable to the trial court's ruling. *See State v. Delaney*, 869 P.2d 4, 5 (Utah App.1994).

On July 20, 1991, a Utah Highway Patrol trooper stopped a car travelling just south of Nephi to issue the driver a warning for speeding. After the vehicle stopped, the trooper approached the driver, defendant Ziegleman, and asked for his driver's license and vehicle registration. Defendant produced his driver's license, but could not produce a vehicle registration. Defendant said he had borrowed the car from a friend from Minnesota named Bill, but he could not provide any other information about the car's owner, nor did he have written permission from "Bill" to use the car. Defendant appeared extremely nervous to the trooper as he searched for the registration form. Defendant eventually found an insurance information form with the name "William Kayler" on it, which he gave to the trooper.

By this point, the trooper suspected the car was stolen. He requested an NCIC (National Crime Information Center) check on the car, but the report came back negative and confirmed that the vehicle was owned by William Kayler. However, the trooper later testified that stolen vehicles are not always promptly listed as having been reported stolen, so he still suspected the car was stolen.

The trooper returned to the car and asked defendant where he had been and where he was going. Defendant said he and his passenger, Michael McNaughton, had been to California and were going back home to Minnesota. The trooper asked if any weapons or narcotics were in the vehicle. Defendant said he did not believe anything of that sort was in the car. The trooper then asked defendant, "Do you mind if we look?," referring to himself and a deputy who was riding with him. Defendant unhesitatingly replied, "Help yourself," then got out of the car. The trooper then asked the passenger, McNaughton, to exit the car, which McNaughton did. The trooper noted that McNaughton exhibited extreme nervousness, which further reinforced his suspicion that the two men had stolen the car.

As the trooper began to search the car, he found a package of "Zig Zag" rolling papers inside a shoe in the back seat. At the suppression hearing, the trooper testified that such papers are typically used for rolling marijuana cigarettes, but that they can also be used for rolling tobacco. The trooper then searched the trunk of the car, but found nothing of consequence.

The trooper last searched under the hood of the car. There he saw an oil cloth wedged between the battery and interior wall of the right front fender. He felt the cloth and could tell that it contained something that felt like a brick of narcotics. Further inspection revealed that the cloth covered a brown grocery bag that contained a kilogram of cocaine.

Defendant and McNaughton were arrested and charged with possession of cocaine with intent to distribute. Defendant and McNaughton filed motions to suppress, which the trial court denied in January 1992, following an evidentiary hearing.

On interlocutory appeal, this court, in a memorandum decision filed September 9, 1993, upheld the validity of the stop, reversed the trial court's determination that the continued detention was justified,[1] held that de-

---

1. The State conceded that the trooper's question to defendant of whether there were any weapons

fendant had standing,[2] and remanded the case for the trial court to address " 'whether [defendant's] consent was obtained by police exploitation of the prior illegality' ... or, in other words, 'whether the "taint" of the Fourth Amendment violation was sufficiently attenuated to permit introduction of the evidence.' " *State v. Ziegleman*, No. 920344–CA, slip op. at 2 (Utah App. Sept. 9, 1993). On remand, the trial court again denied defendant's motion to suppress.

## STANDARD OF REVIEW

■ On appeal we address whether the trial court properly applied the legal test to determine the voluntariness of defendant's consent to search the car, a question of law we review for correctness. *State v. Thurman*, 846 P.2d 1256, 1271–72 (Utah 1993). The trial court's findings of fact that underlie its "attenuation" determination will not be reversed unless clearly erroneous. *Id.*

## ANALYSIS

In *State v. Arroyo*, the Utah Supreme Court held that "[t]wo factors determine whether consent to a search is lawfully obtained following initial police misconduct": (1) whether the consent was voluntarily given, and (2) whether the consent was not obtained through exploitation of the prior illegal police conduct. 796 P.2d 684, 688 (Utah 1990).

The first *Arroyo* factor has been met. On remand, the trial court concluded that defendant's consent to search the car was "freely and unequivocally given." Defendant has not challenged this finding on appeal; therefore, we accept it.

■ The second *Arroyo* factor examines whether defendant's consent was the product of police exploitation of the illegal stop, "or in other words, 'whether the "taint" of the Fourth Amendment violation was sufficiently attenuated to permit introduction of the evidence.' " *State v. Thurman*, 846 P.2d 1256,

1263 (quoting *New York v. Harris*, 495 U.S. 14, 19, 110 S.Ct. 1640, 1643–44, 109 L.Ed.2d 13 (1990)). We are required to consider three elements to determine whether defendant's consent was sufficiently attenuated: (1) " 'the purpose and flagrancy of the official misconduct,' " (2) the " 'temporal proximity' of the illegality and the consent," and (3) " 'the presence of intervening circumstances.' " *Id.* at 1263 (quoting *Arroyo*, 796 P.2d at 691 n. 4 (citing *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975))).

The State conceded that two of these factors weigh against attenuation: the temporal proximity of the improper question by the trooper and the consent to search given by the defendant; and the absence of any intervening circumstance that would alter the attenuation analysis.

The "purpose and flagrancy" element was therefore the focus of the trial court's consideration. This element "directly relates to the deterrent value of suppression." *Id.* at 1263 (citing *Brown*, 422 U.S. at 608–12, 95 S.Ct. at 2264–66 (Powell, J., concurring)). Therefore, "if the police had no 'purpose' in engaging in the misconduct—for example, if the illegality arose because [a court] later invalidated a statute on which the police had relied in good faith—suppression would have no deterrent value." *Id.* at 1263–64.

On remand, the trial court based its decision to deny defendant's motion to suppress only on the "purpose and flagrancy" element because it found that suppression of the evidence in this case would have "absolutely no deterrent effect." The court reasoned that there would be no deterrence in this case because the trooper testified that he no longer asked traffic violators whether they were transporting drugs or firearms, and because when the trooper discovered the cocaine in defendant's car, no Utah appellate decision had clearly stated that such a question was

or narcotics in the vehicle exceeded the scope of detention for a routine traffic stop and bore no relation to the issue of whether the vehicle was stolen, and thus the continued detention of defendant violated the Fourth Amendment.

2. The State conceded that defendant had standing.

improper under the circumstances.[3] In addition, the trial court found that the trooper's habit of asking the improper question was based on training he had received as a highway patrol officer. The court drew an analogy between this case and the hypothetical situation in which "the illegality arose because [a court] later invalidated a statute on which the police had relied in good faith[, where] suppression would have no deterrent value." *Id.* at 1264 (citation omitted). The trial court concluded that because case law, statutes, and departmental policy existing at the time of defendant's stop did not prohibit the question the trooper asked defendant, the resulting misconduct was only a "technical violation," similar to that resulting from reliance on a statute later invalidated. The trial court also concluded that the deterrent purpose underlying the *Thurman* attenuation doctrine was not implicated in cases involving mere technical violations and that "the absence of a temporal break or other intervening circumstances between the asking of the improper questions and defendant's consent to search [was therefore] inconsequential."

The trial court correctly understood that the deterrent purpose underlies the "purpose and flagrancy" element of the attenuation test and has particular importance. *See Brown*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62 (noting that "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, *and, particularly,* the purpose and flagrancy of the official misconduct are all relevant" in determining whether a confession is obtained by exploitation of an illegal arrest (emphasis added) (footnotes and citation omitted)). The trial court was also correct in concluding that the Utah Supreme Court has suggested that some cases may be decided solely on the "purpose and flagrancy" element. In *Thurman*, the court stated that "[i]n *most* cases, consideration of purpose and flagrancy will not end the exploitation inquiry." *Thurman*, 846 P.2d at 1264 (emphasis added). This language clearly suggests that in some cases the consideration of purpose and flagrancy

may well end the exploitation inquiry. However, the trial court was mistaken in concluding that this particular case may be decided solely on the "purpose and flagrancy" factor.

While the trial court correctly concluded that case law existing on July 20, 1991 did not specifically prohibit the trooper from asking defendant whether he was carrying any weapons or narcotics, the court erred in concluding that existing case law did not adequately suggest that such a question during a routine traffic stop was improper. The State argued that since Utah had not explicitly addressed the legality of asking a motorist during a routine traffic stop whether he or she was carrying weapons or narcotics, the trooper had properly relied on Tenth Circuit cases that allowed such behavior. In fact, there were a number of reported cases from the federal court that did appear to sanction such an interrogation. *See, e.g., United States v. Werking*, 915 F.2d 1404 (10th Cir. 1990) (holding that officer's request to search motorist's vehicle for narcotics and weapons during traffic stop did not violate Fourth Amendment because it merely constituted officer's request for private citizen to voluntarily cooperate); *United States v. Walraven*, 892 F.2d 972 (10th Cir.1989) (holding that officer's request to search vehicle was permissible following negative NCIC check); *United States v. Diaz–Albertini*, 772 F.2d 654 (10th Cir.1985) (same), *cert. denied*, 484 U.S. 822, 108 S.Ct. 82, 98 L.Ed.2d 45 (1987). *Cf. United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988) (holding that officer's follow-up questions after pretextual traffic stop were unreasonable and violated Fourth Amendment).

However, by the time the trooper had stopped Ziegleman, the Tenth Circuit had decided *United States v. Walker*, 933 F.2d 812 (10th Cir.1991), *cert. denied*, 502 U.S. 1093, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). In *Walker*, an officer stopped the defendant Walker for speeding. Before getting out of his car, the officer ran an NCIC check on the defendant's car and was told that it had not been reported stolen. When the officer

---

**3.** Six months after defendant was stopped, we held that detaining an individual during a traffic stop to engage in such questioning was improp-

er. *State v. Godina–Luna*, 826 P.2d 652 (Utah App.1992).

asked the defendant for his driver's license and vehicle registration, he noticed that the defendant was so nervous that his hands shook. The officer asked the defendant a number of questions, such as whether the defendant's car contained any open containers of alcohol or if any controlled substance was in the car. Then the officer asked the defendant if he could search the car for the items about which he had inquired. The defendant responded, "Sure, go ahead." The officer found 86 kilograms of cocaine in the car and arrested the defendant. The court found that the officer's continued detention of the defendant beyond the time required to receive the information needed to issue a speeding citation constituted an unreasonable seizure under the Fourth Amendment. *Id.* at 816. *Walker,* the most current applicable Tenth Circuit case at the time the trooper stopped defendant Ziegleman, held that such questioning during a routine traffic stop was improper.

More importantly, this court had strongly indicated in 1990 that such questioning would violate the Fourth Amendment. In *State v. Robinson,* we explained that after an officer has completed the purpose of a traffic stop, "[a]ny further temporary detention for investigative questioning ... is justified under the fourth amendment only if the detaining officer has reasonable suspicion of serious criminal activity." 797 P.2d 431, 435 (Utah App. 1990). Therefore, although we agree with the trial court that "[n]o one would suggest that law enforcement officers should be clairvoyant enough to divine future appellate decisions," case law existed at the time of defendant's stop which adequately suggested that the trooper's question to defendant violated the Fourth Amendment.

■■■ In addition, we note that the trial court's emphasis was misplaced on the fact that suppressing the cocaine in this case would not deter this trooper's improper behavior. Admittedly, this trooper had already conformed his practices to the most recent guidance offered by the courts on this difficult issue. However, a court's examination of deterrence must be made with reference to law enforcement generally, rather than to one officer particularly. Therefore, the trial court should not have focused exclusively on this trooper's behavior following the seizure of the cocaine in defendant's car to determine the deterrent value of suppression. *See United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976) ("[T]he 'prime purpose' of the [exclusionary] rule, if not the sole one, 'is to deter future unlawful police conduct.' ... [T]he rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect....").

■■■ We therefore conclude, after reviewing the three exploitation analysis factors, that there was not sufficient attenuation between the impermissible question and defendant's consent to search. *See State v. Bello,* 871 P.2d 584, 589 (Utah App.) (holding defendant's consent was obtained through exploitation of illegal police stop after examining three attenuation factors), *cert. denied,* 883 P.2d 1359 (Utah 1994). We hold that the trooper did not lawfully obtain defendant's consent to search the car. Although defendant's consent was voluntary in fact, it was obtained through the exploitation of the trooper's illegal question of whether defendant had any narcotics or weapons in his car. Consequently, the cocaine seized from defendant's car must be excluded pursuant to *State v. Larocco,* 794 P.2d 460, 472 (Utah 1990) (plurality opinion).

## CONCLUSION

We hold that although defendant's consent to search his car was voluntary in fact, it was obtained through the exploitation of prior illegal conduct. We reverse the trial court and order that the evidence seized must be suppressed.

DAVIS, Associate P.J., and BILLINGS, J., concur.