2010 UT App 380

**STATE of Utah, Plaintiff and Appellee,**

v.

**Dale E. NEWLAND, Defendant and Appellant.**

No. 20080977–CA.

Court of Appeals of Utah.

Dec. 23, 2010.

Randall T. Gaither, Salt Lake City, for Appellant.

Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee.

Before Judges THORNE, ROTH, and CHRISTIANSEN.

### OPINION

ROTH, Judge:

¶ 1 Dale E. Newland appeals from the trial court's denial of his motion to suppress evidence of child pornography that police found on his laptop computer after he had ostensibly consented to the search. Newland asserts that the evidence should have been suppressed because his consent was tainted by a prior illegal search of the computer. The State argues that the motion was properly denied because Newland's consent was not obtained through exploitation of the initial illegal search. We affirm.

### BACKGROUND

¶ 2 Search and seizure cases are highly fact dependent, so we recite the pertinent facts, none of which are disputed, in some detail. *See State v. Brake,* 2004 UT 95, ¶ 2, 103 P.3d 699. In May 2006, a Clearfield City police officer, responding to a reported trespass by two juveniles in a vacant apartment unit, recovered stolen property, including a laptop computer. The responding officer contacted Officer Kyle Jeffries, a property crimes investigator, to retrieve the stolen property from the location where it was found. When Officer Jeffries first saw the laptop, the lid was open and a text document was on the screen. Although he glanced at the document, Officer Jeffries did not review it closely. Instead, he closed the lid and flipped the laptop over to locate the serial number. The serial number corresponded with that of a laptop computer Newland had reported stolen, so Officer Jeffries notified Newland that his laptop had been recovered and could be retrieved at the police station.

¶ 3 While awaiting Newland's arrival at the station, Officer Jeffries decided to take another look at the text document to determine if it contained any evidence of the juveniles' activities. Although he did not recall closing the document prior to the laptop's transport to the police station, the text document was no longer on the screen when he reopened the computer's lid. For that reason, he began searching through the file folders appearing on the computer's desktop, the first screen that he saw. In the course of his search for the document, he opened a folder titled "My Pictures," in which he saw thumbnail images [1] of naked females who appeared

---

1. Thumbnails, or "miniature computer graphic[s]" of the files within a computer folder, are an organizational format that allows the user to quickly view the folder's contents. *See Merriam-* *Webster's Collegiate Dictionary* 1305 (11th ed. 2004). A thumbnail of a photograph file is a miniature version of the saved image.

to him to be under the age of eighteen. He immediately discontinued his search.

¶ 4 Officer Jeffries then approached Newland, who had since arrived at the police station, and requested consent to search the computer for evidence that the juveniles may have placed on the computer. The officer did not inform Newland of his previous search or the nature of the evidence he was seeking. Newland gave his consent to the search.

¶ 5 Officer Jeffries returned to his office, opened the files, and confirmed that they did contain photographs of naked females who appeared to be under eighteen years of age. He then informed Newland that he had found evidence (which he did not describe) on the computer and that he was going to send the laptop to the state forensic laboratory for further examination. Newland made no protest and thanked the officer. At some point after he obtained Newland's consent to search the computer, Officer Jeffries also asked another police officer to assist him in locating the date and time that the photographs had been saved on the computer. Their investigation indicated that the photographs had been placed on the computer prior to the date that Newland had reported the laptop stolen. Officer Jeffries obtained a search warrant and sent the computer to the forensic laboratory where an investigator in the Internet Crimes Against Children Unit determined that twenty-one photographs saved on the computer prior to its theft appeared to be child pornography. The crime laboratory also determined that the photographs were stored in the "My Pictures" folder that was linked to Newland's computer profile, the only one of the four user profiles set up on the laptop that was not password-protected.

¶ 6 Newland was charged by information with three counts of sexual exploitation of a minor, each a second degree felony, *see* Utah Code Ann. § 76–5a–3(1)(a), (2) (Supp.2010).[2]

Newland moved to suppress the child pornography found on his laptop as the fruit of an illegal search. Following a hearing, the trial court denied the motion, holding that although the initial search was illegal, Newland's consent cured the illegality because the consent was voluntary and was not obtained through exploitation of the prior illegality. Newland was later convicted on all three counts. He now challenges the trial court's denial of his motion to suppress.

## ISSUE AND STANDARD OF REVIEW

¶ 7 We review the trial court's denial of a motion to suppress evidence based on undisputed facts for correctness. *See State v. Tripp,* 2010 UT 9, ¶ 23, 227 P.3d 1251. "In search and seizure cases, no deference is granted to . . . the district court regarding the application of law to underlying factual findings." *State v. Alverez,* 2006 UT 61, ¶ 8, 147 P.3d 425 (citing *State v. Brake,* 2004 UT 95, ¶ 15, 103 P.3d 699).

## ANALYSIS

¶ 8 The State does not contest the trial court's determination that the initial search of Newland's computer without a warrant or consent constituted an illegal search in violation of the Fourth Amendment of the United States Constitution. *See* U.S. Const. amend. IV (protecting citizens from unreasonable searches of personal effects).[3] For purposes of this appeal, therefore, we assume, without deciding, that the initial search violated Newland's constitutional rights. Thus, the only issue presented for appeal is whether the child pornography evidence discovered during the course of the ensuing consent search should have been suppressed as a fruit of the initial illegality.

¶ 9 An illegal search does not inevitably result in the suppression of all evidence that would not have been discovered had the wrongful search not happened:

---

2. For the convenience of the reader, we cite to the current version of the code because the 2009 amendments have no effect on our analysis. *See* Utah Code Ann. § 76–5a–3 (Supp.2010) (amend. notes).

3. State officers are bound by the Fourth Amendment of the United States Constitution pursuant to the Fourteenth Amendment. *See State v. Perkins,* 2009 UT App 390, ¶ 9 n. 4, 222 P.3d 1198. Newland does not make a separate claim under the Utah Constitution.

We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether granting establishment of the primary illegality, the evidence to which instant objection is made. has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (internal quotation marks omitted); *see also State v. Arroyo,* 796 P.2d 684, 688 (Utah 1990) (rejecting a pure "but for" test in favor of the *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), exploitation test). The State contends that the trial court correctly ruled that Newland's subsequent voluntary consent to search the computer removed any taint from the initial illegal search.[4]

■ ¶ 10 "Two factors determine whether consent to a search is lawfully obtained following initial police misconduct[:] . . . whether the consent was voluntary and whether the consent was obtained by police exploitation of the prior illegality." *Arroyo,* 796 P.2d at 688.[5] Newland does not dispute that his consent was voluntarily given. Rather, he contends the consent was tainted by the illegal search.

■ ¶ 11 Our inquiry therefore focuses on whether Newland's consent was obtained through exploitation of the illegal initial search or if his consent was sufficiently separate from the initial search to remove any resulting taint. The primary purpose of the exploitation analysis is to identify situations where, even given a defendant's voluntary consent, the only way " 'to compel respect for the constitutional guaranty [against unlawful searches and seizures is to] . . . remov[e] the incentive to disregard it.' " *State v. Hansen,* 2002 UT 125, ¶ 62, 63 P.3d 650 (quoting *Brown v. Illinois,* 422 U.S. 590, 599–600, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). Thus, "[w]hen conducting an exploitation analysis, a court 'evaluates the relationship between offi-

4. The State points out that Newland's appellate brief focuses on demonstrating that neither the inevitable discovery or independent source exceptions to the exclusionary rule apply to the facts of this case rather than analyzing whether the police exploited the prior illegal search. We agree with the State that the trial court denied the motion to suppress because it determined that Newland's consent was not obtained through exploitation of the initial illegal search and not on the inevitable discovery or independent source exceptions. Nevertheless, because Newland challenges the substance of the trial court's ruling—that the pornographic photographs were admissible despite the illegal search—we will review the merits of Newland's claim.

5. The State has invited us to overrule this two-pronged approach adopted in *State v. Arroyo,* 796 P.2d 684 (Utah 1990), in favor of the single-pronged voluntariness inquiry adopted by the Tenth Circuit in *United States v. Carson,* 793 F.2d 1141 (10th Cir.1986). *See generally* 793 F.2d at 1147–48 (holding that the determination of whether evidence discovered following illegal police conduct should be excluded depends upon whether the consent was voluntary because "voluntary consent . . . is an intervening act free of police exploitation of the primary illegality and is sufficiently distinguishable from the primary illegality to purge the evidence of its primary taint"). We decline the State's invitation for a number of reasons.

First, the Utah Supreme Court has carefully considered and expressly rejected the *Carson* approach in *Arroyo. See Arroyo,* 796 P.2d at 689–90. Since then, both the supreme court and this court have consistently applied the *Arroyo* test without reservation. *See, e.g., State v. Tripp,* 2010 UT 9, ¶ 27, 227 P.3d 1251; *State v. Hansen,* 2002 UT 125, ¶ 47, 63 P.3d 650; *State v. Thurman,* 846 P.2d 1256, 1262 (Utah 1993); *State v. Ziegleman,* 905 P.2d 883, 885 (Utah Ct.App. 1995). Additionally, under principles of vertical stare decisis, we are prohibited from departing from the precedent established by our supreme court. *See State v. Tenorio,* 2007 UT App 92, ¶ 9, 156 P.3d 854 ("Vertical stare decisis . . . compels a court to follow strictly the decisions rendered by a higher court." (omission in original) (internal quotation marks omitted)).

Moreover, *Carson* is of questionable authority. In *United States v. Melendez–Garcia,* 28 F.3d 1046 (10th Cir.1994), the Tenth Circuit observed that the *Carson* panel violated principles of horizontal stare decisis when it adopted the single-factor test despite an earlier Tenth Circuit decision implementing the dual-prong approach that is currently used in Utah. *See* 28 F.3d at 1054. The *Melendez–Garcia* court declined to follow *Carson* and instead reinstated the two-part analysis. *See id.* Recent Tenth Circuit decisions have followed *Melendez–Garcia. See, e.g., United States v. Fox,* 600 F.3d 1253, 1257, 1260 (10th Cir.2010); *United States v. Reeves,* 524 F.3d 1161, 1170 (10th Cir.2008).

cial misconduct and subsequently discovered evidence to determine if excluding the evidence will effectively deter future illegalities.' " *Id.* (quoting *State v. Shoulderblade,* 905 P.2d 289, 292 (Utah 1995)). In *State v. Arroyo,* 796 P.2d 684 (Utah 1990), the Utah Supreme Court identified " 'temporal proximity of the [illegality] and the [consent], the presence of intervening circumstances [and] the purpose and flagrancy of the official misconduct' " as factors that courts should consider in making this determination. *See id.* at 691 n. 4 (third alteration in original) (quoting *Brown,* 422 U.S. at 603–04, 95 S.Ct. 2254).[6]

¶ 12 In this case, the trial court determined that Newland gave his consent soon after the initial search and the events were therefore temporally proximate. With respect to intervening circumstances between the illegal search and the consensual one, the court found none. But, it also decided that Officer Jeffries's conduct was not purposeful or flagrant. After weighing and balancing these three *Arroyo* factors, the trial court concluded that Newland's consent was not the result of exploitation of the prior illegal search and that " 'whatever deterrent value may result from suppression in this case is greatly outweighed by society's interest in placing all relevant evidence before the jury.' " (Quoting *State v. Thurman,* 846 P.2d 1256, 1274 (Utah 1993).) On that basis, the court denied the motion to suppress. We now examine each of the factors to determine whether the trial court correctly concluded that the evidence was not obtained through exploitation of the prior search.

### I. Temporal Proximity

¶ 13 The trial court found that Officer Jeffries sought Newland's consent immediately after he conducted the illegal search. Although the State concedes that there was

close temporal proximity, it also raises Newland's lack of knowledge of the initial illegal search as a separate factor for our consideration.[7] We agree that a defendant's lack of awareness of a prior search when he gives consent is relevant to the exploitation analysis, though we believe it should be considered within the existing three-factor analysis established by *Arroyo.* The Utah appellate courts have not yet had an opportunity to consider under which prong of the analysis this factor fits. Other jurisdictions, however, have addressed the issue and reached divergent conclusions. For example, some courts have held that a defendant's lack of awareness of a prior illegal search amounts to an intervening circumstance. *See, e.g., United States v. Furrow,* 229 F.3d 805, 814 (9th Cir.2000) ("Lack of knowledge of a prior search is an intervening factor which dissipates the coercion inherent in a request for consent made after an unconstitutional search."), *rev'd on other grounds by United States v. Johnson,* 256 F.3d 895 (9th Cir. 2001); *State v. Guillen,* 223 Ariz. 314, 223 P.3d 658, 662 (2010) (stating that the defendant's wife's lack of knowledge of the illegal search prior to her giving consent to search the couple's garage was an intervening circumstance because it "constitute[d] a major break in the causal chain"); *State v. Gorup,* 279 Neb. 841, 782 N.W.2d 16, 31 (2010) (indicating that a defendant's oblivion to a prior search could constitute an intervening circumstance). Other courts have concluded that lack of awareness of the initial illegality is a circumstance that mitigates the effect of close time proximity. *See, e.g., State v. Lane,* 726 N.W.2d 371, 384 (Iowa 2007) (stating that although the short time lapse between the defendant's illegal arrest and his live-in girlfriend's consent to search their home suggests exploitation, the fact that the girlfriend did not know that the defendant

---

6. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), involved the procurement of a confession following an illegal arrest. "[I]ts analysis applies equally to consent given after an illegal search or seizure." *United States v. Holmes,* 505 F.3d 1288, 1294 (D.C.Cir.2007); *see also State v. Thurman,* 846 P.2d 1256, 1263 (Utah 1993) (applying the *Brown* analysis to a consent following an illegal search).

7. The trial court rejected the State's contention that Newland's lack of knowledge that Officer Jeffries had already searched the laptop when he gave consent weighed against exclusion, reasoning that Newland's knowledge of the prior search related to the voluntariness analysis, not the exploitation inquiry. It did, however, find that Newland was not present when the initial search occurred.

had been illegally arrested reduced the significance of close temporal proximity); *see also United States v. Hernandez*, 279 F.3d 302, 311 (5th Cir.2002) (Jones, J., dissenting) (recognizing that "temporal proximity did not function in the same way since [the defendant] never knew her bag had been [illegally searched]" prior to her granting consent). Although the fact that a defendant did not know of the initial violation may be relevant to both factors, under the facts of this case, we believe that it is most appropriately considered as part of the temporal proximity factor.

¶ 14 It is generally the case that "[a] brief time lapse between a Fourth Amendment violation and consent ... indicates exploitation because the effects of the misconduct have not had time to dissipate." *Shoulderblade*, 905 P.2d at 293. Unlike the intervening circumstances and the purpose and flagrancy factors, however, temporal proximity does not directly address the relationship between the police misconduct and the consent for the subsequent search but rather is "a circumstance surrounding these events." *See id.* As a result, its relative probative value expands and contracts depending on the particular facts of any given case. Where a defendant does not know about the prior illegality, the closeness in time is unlikely to have any effect on the defendant's decision to grant consent. *See generally Furrow*, 229 F.3d at 814 (observing that a person's judgment is unimpaired by taint where he lacks knowledge of the illegal entry and search because he is in the same position as a person who was not subject to any police illegality). Thus, Newland's lack of knowledge of the prior search diminished the significance of the close temporal proximity between Officer Jeffries's initial search and Newland's consent, and we conclude that this factor therefore adds no weight either in favor or against suppression in our analysis of the *Arroyo* factors.

## II.  Intervening Circumstances

¶ 15 Intervening circumstances are events that create a "clean break in the chain of events between the misconduct and the ... consent." *Hansen*, 2002 UT 125, ¶ 68, 63 P.3d 650 (omission in original) (internal quotation marks omitted); *see also United States v. Fox*, 600 F.3d 1253, 1260 (10th Cir.2010) ("The facts or events must create a discontinuity between the illegal[ity] ... and the consent such that the original illegality is weakened and attenuated." (internal quotation marks omitted)). Though no court of which we are aware has defined precisely what constitutes an intervening circumstance, various courts have found, for example, that the following have to some extent mitigated the taint of the initial illegal search: notification of the right to refuse consent, *see, e.g., Hansen*, 2002 UT 125, ¶ 68, 63 P.3d 650; receipt of warnings regarding the rights to remain silent and to consult an attorney pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *see, e.g., Thurman*, 846 P.2d at 1273; release from custody or an appearance before a magistrate, *see, e.g., Fox*, 600 F.3d at 1261; *Lane*, 726 N.W.2d at 385. *See also Furrow*, 229 F.3d at 814 (lack of knowledge of the prior search); *Guillen*, 223 P.3d at 662 (same).

¶ 16 The trial court held that there were no intervening circumstances in the present case, and the State does not dispute this conclusion on appeal. Based on this concession, which we consider appropriate under the circumstances, we accept that this factor weighs in favor of suppression without further review.

## III.  Purpose and Flagrancy

¶ 17 The Utah Supreme Court has treated "purpose and flagrancy" as the most significant factor in a suppression analysis because it "directly relates to the deterrent value of suppression." *State v. Thurman*, 846 P.2d 1256, 1263 (Utah 1993); *see also Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (noting that "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, *particularly*, the purpose and flagrancy of the official misconduct are all relevant" to determining whether the confession was obtained by exploitation of the arrest (emphasis added) (footnotes and citation omitted)).

¶ 18 "All Fourth Amendment violations are, by constitutional definition, 'unreasonable.' There are, however, significant practical differences that distinguish among violations, differences that measurably assist in identifying the kinds of cases in which disqualifying the evidence is likely to serve the deterrent purposes of the exclusionary rule." *Brown*, 422 U.S. at 609, 95 S.Ct. 2254 (Powell, J., concurring in part). The Utah Supreme Court has observed that when the "police have no 'purpose' in engaging in the misconduct—for example, if the illegality arose because [the courts] later invalidated a statute on which the police had relied in good faith—suppression would have no deterrent value." *Thurman*, 846 P.2d at 1264. If, however, the officers engaged in the illegal act for the purpose of obtaining consent or the misconduct was flagrantly abusive, the court noted that suppression "clearly will have a deterrent effect and further analysis rarely will be required." *Id. Compare id.* at 1273–74 (affirming the denial of a motion to suppress where the officers were "acting under a valid [search] warrant" but illegally executed it), *with State v. Hansen*, 2002 UT 125, ¶ 66, 63 P.3d 650 (suppressing drug evidence after the defendant was illegally detained for the purpose of "exploit[ing] the opportunity to ask for consent" to search the vehicle).[8]

¶ 19 "Between these extremes lies a wide range of situations that defy ready categorization.…" *Brown*, 422 U.S. at 612, 95 S.Ct. 2254 (Powell, J., concurring in part). The facts of this case, when viewed as supporting the assumption that the initial search was illegal, present such a situation. Officer Jeffries had been called to the scene by the responding officer after that officer had located stolen property. The responding officer filed a report the same date stating that the juveniles had been arrested and that the case was closed. By the time Officer Jeffries searched the laptop, he had identified its owner—Newland, contacted him and asked him to retrieve the computer from the police station, and was waiting for him to arrive. Officer Jeffries further testified that upon leaving the apartment where the juveniles had been arrested, his "intent was just to give [Newland] his property back." Before doing this, however, he decided to take a further look at the text document he had seen on the computer's screen to determine if it provided any further information on what the juveniles had been doing. Under these facts, Officer Jeffries appeared to be simply following up on what amounted to professional curiosity and had no immediate reason for further exploring the contents of Newland's computer without either a warrant or Newland's consent. Professional curiosity may be a useful tool of the trade, and it is not our intent to unduly discourage personal initiative in conducting investigations, particularly where we have neither considered nor decided that Officer Jeffries's conduct was actually prohibited by the Fourth Amendment. *See supra* ¶ 8. Nevertheless, the State's concession that the search was unlawful requires us to view the facts in a manner that renders Officer Jeffries's actions, in the absence of a warrant, unreasonable, whether or not his conduct may otherwise have been generally acceptable as an investigative approach.

¶ 20 That his actions were unreasonable, however, is not the determinative factor; all Fourth Amendment violations are by definition unlawful and therefore unreasonable. Rather, the officer's actions had to rise to the level of purposeful or flagrant to invoke the exclusionary rule. *See Brown*, 422 U.S. at 605, 95 S.Ct. 2254 (requiring consideration of whether the violation had a "quality of purposefulness" or was carried out "in the hope that something might turn up"); *accord State v. Arroyo*, 796 P.2d 684, 691 n. 4 (Utah 1990); *see also United States v. Herrera–Gonzalez,*

---

8. Notably, in the case where the supreme court affirmed the admission of the evidence, it also determined both that there was temporal distance because the consent was given five hours after the illegal entry and initial search and that there were intervening circumstances where the officer informed the defendant of his constitutional right to refuse to consent to the search as well as his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and removed the defendant's handcuffs during the explanation of these rights. *See Thurman*, 846 P.2d at 1274. In the case where the evidence was suppressed, the appellate court also found no intervening circumstances or significant time lapse. *See State v. Hansen*, 2002 UT 125, ¶¶ 68–69, 63 P.3d 650.

474 F.3d 1105, 1113 (8th Cir.2007) ("[U]nreasonableness itself does not suggest that [an officer's] conduct was obviously improper or flagrant, or that he knew it was likely unconstitutional."). The Eighth Circuit has held that unreasonable conduct becomes purposeful and flagrant when "(1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed 'in the hope that something might turn up.'" *United States v. Simpson*, 439 F.3d 490, 496 (8th Cir.2006) (quoting *Brown*, 422 U.S. at 605, 95 S.Ct. 2254); *accord United States v. Fox*, 600 F.3d 1253, 1261 (10th Cir.2010) (employing the Eighth Circuit's definition of purposeful and flagrant conduct).

¶ 21 The record demonstrates that Officer Jeffries did not initially search the computer with the purpose of obtaining Newland's consent or as a pretext for investigating any crimes suspected to have been committed by Newland. Thus, to the extent that the search was investigatory in design, it was aimed not at Newland, but at the two juveniles in whose possession the computer was recovered. Further, those juveniles had no privacy interest subject to Fourth Amendment protection in the contents of a stolen computer that they did not lawfully possess. *See generally State v. Constantino*, 732 P.2d 125, 126–27 (Utah 1987) (per curiam) (holding that the defendant had no privacy interest in the vehicle where he did not own it or have permission to borrow it). Officer Jeffries testified that even after he found the child pornography, he was still concerned that it was the juveniles who placed the photographs on the computer. At least one other court, in conjunction with a purpose and flagrancy analysis, has found that the fact that the initial illegality was aimed at obtaining information regarding a third person weighs against purposefulness. *See United States v. Green*, 111 F.3d 515, 523 (7th Cir.1997) (recognizing that the initial detention was illegal but concluding that the officer's conduct had not been flagrant where the vehicle was detained for the purpose of obtaining information on the whereabouts of a third party).

¶ 22 The evidence likewise does not indicate that Officer Jeffries was aware that his initial search of the laptop was improper; rather, he acted under a misapprehension. *See generally Herrera–Gonzalez*, 474 F.3d at 1113 ("An unreasonable mistake alone is not sufficient to establish flagrant misconduct."). At the suppression hearing, Officer Jeffries testified that he had seen a text document on the screen when he first recovered the laptop and he suspected that he might find evidence of the juveniles' activities in it. Although he did not seek a search warrant or request consent prior to the search, Officer Jeffries believed that he had an arguable basis for searching the computer based on his recollection of that document and his desire to follow the lead that he thought it gave him. *Cf. United States v. Reed*, 349 F.3d 457, 465 (7th Cir.2003) (suggesting that purposeful and flagrant conduct can arise from circumstances where "the police lack an arguable basis for the detention"), *aff'd*, 443 F.3d 600 (7th Cir. 2006). Once he found what appeared to be pornographic photographs of underage females, however, Officer Jeffries realized that the scope of his search had expanded beyond his original task of finding the text document and immediately ceased the search.

¶ 23 Furthermore, the computer profile on which the pornographic photographs were found—Newland's—had none of the usual indicators of privacy that might be expected under the circumstances. Despite the portability of the laptop and its multiple users, Newland's profile, unlike the other user accounts, was not password-protected. Moreover, the pornographic photographs were stored in a folder appearing on the desktop, i.e., the first screen that would be visible upon accessing the computer. Nor does the folder's label, "My Pictures," communicate any intent to keep private the documents and images stored in it.[9] *Cf. State v. Guillen*, 223 Ariz. 314, 223 P.3d 658, 662 (2010) (consider-

---

9. Although the label suggests the folder would contain images rather than text documents like Officer Jeffries was seeking, the label alone neither precludes the presence of text documents nor makes searching the folder flagrant or purposeful.

ing the lack of traditional privacy indicators around the defendant's property, such as fencing or no trespassing signs, in reaching a conclusion that the dog sniff around the outside of the garage was not a flagrant illegal search). When the officer opened the folder, he did not open any of its files but instead was immediately presented with thumbnail images of the pictures it contained. The thumbnails were of sufficient clarity to suggest that the stored photographs portrayed unclothed underage females, and as soon as he saw them, Officer Jeffries stopped his search.

¶ 24 The trial court found that under the totality of the facts, Officer Jeffries's conduct was "not flagrant misconduct," but "was instead caused by negligence." Newland does not challenge those findings. Even though we do not defer to the trial court's conclusions in this regard, but review them for correctness, we too conclude, based on all the circumstances, that Officer Jeffries's initial search of Newland's laptop was neither a purposeful nor flagrant derogation of Newland's rights. The purpose and flagrancy factor therefore balances against suppression of the evidence recovered in the subsequent consensual search.

¶ 25 In summary, we accept the State's concession that the intervening circumstances factor weighs in favor of suppression, determine that Newland's lack of knowledge about the initial illegal search neutralizes the temporal proximity factor, and conclude that the purpose and flagrancy factor weighs against suppression.

■■■ ¶ 26 We must now decide whether the trial court correctly concluded that the consent was not obtained through exploitation of the initial illegality.

[T]he exploitation analysis requires a balancing of the relative egregiousness of the misconduct against the time and circumstances that intervene before the consent is given. [Thus, t]he nature and degree of the illegality will usually be inversely related to the effectiveness of time and intervening events to dissipate the presumed taint.

*State v. Thurman*, 846 P.2d 1256, 1264 (Utah 1993). "This balancing [test] necessitates consideration of all factors without giving any of them dispositive weight." *State v. Shoulderblade*, 905 P.2d 289, 293 (Utah 1995). The factors, however, are not of mathematically equal importance. *See Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (noting the particular importance of the purpose and flagrancy factor); *accord Thurman*, 846 P.2d at 1263–64. "[W]here it appears that the illegality arose as the result of negligence, the lapse of time between the misconduct and the consent and the presence of intervening events become less critical to the dissipation of taint." *Thurman*, 846 P.2d at 1264. In this case, because the temporal proximity factor is neutral, only the absence of intervening circumstances must be weighed against the lack of purposefulness and flagrancy. In light of the unchallenged negligence finding, however, "a clean break in the chain of events between the misconduct and the consent" was not required. *Id.* Moreover, because the officer's conduct was due to negligence, we agree with the trial court that the deterrent value of suppression is minimal and "greatly outweighed by society's interest in placing all relevant evidence before the jury," *see id.* at 1274. The trial court therefore correctly denied Newland's motion to suppress.[10]

10. In affirming here, to the extent that the initial search may have been illegal, we are not condoning an officer's violation of Newland's constitutional right to freedom from unreasonable searches of his personal effects. The United States Supreme Court, however, has "never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence." *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009) (internal quotation marks omitted).

The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it. But [d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.

*Brown*, 422 U.S. at 599–600, 95 S.Ct. 2254 (alteration in original) (citation and internal quotation marks omitted). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is

## CONCLUSION

¶ 27 Newland voluntarily consented to the search of his laptop computer. Though the consent was granted almost immediately after the illegal search concluded, Newland's lack of awareness of the initial search reduced the significance of temporal proximity. There were no mitigating intervening circumstances, but Officer Jeffries's conduct involved a negligent rather than a purposeful or flagrant violation of Newland's Fourth Amendment rights. The officer's acts, therefore, do not rise to the level where the need for deterrence requires suppression of the evidence uncovered in the subsequent consensual search. The trial court correctly concluded that the evidence obtained from Newland's computer was not obtained by exploitation of the initial illegal search because his consent was sufficiently separate from that search to purge any resulting taint. Consequently, we affirm the trial court's denial of the motion to suppress.

¶ 28 WE CONCUR: WILLIAM A. THORNE JR. and MICHELE M. CHRISTIANSEN, Judges.

worth the price paid by the justice system." *Her-* *ring,* 129 S.Ct. at 702.