Opinion
ROTH, Judge:
T1 D.L.H. appeals from the juvenile court's denial of his petition for expungement of his juvenile record. We affirm.
BACKGROUND
{ 2 In 2009, D.L.H. admitted to allegations of serious child abuse against three very young children. The juvenile court committed D.LH. to juvenile detention for thirty days but suspended that commitment in favor of probation, which required D.L.H. to, among other things, submit to psychological evaluations and attend counseling. At a review hearing in February 2010, the court set a July completion date for all of D.L.H.'s probation obligations. D.L.H. performed well enough on probation that in May, his probation officer recommended that the court consider terminating probation early: D.L.H. "has completed his therapy and all obligations to the court" and "has demonstrated through his behavior that he is no longer in need of the supervision of the probation department." On that recommendation, the juvenile court released D.L.H. from probation early, terminating its continuing jurisdiction.
| 3 In 2012, after D.L.H. turned eighteen, he petitioned the juvenile court for expungement of his juvenile record. A person who was adjudicated as a minor is eligible for expungement of the juvenile record upon that person's eighteenth birthday and the passage of one year since the termination of the juvenile court's jurisdiction. Utah Code Ann. § 78A-6-1105(1)(a) (LexisNexis 2012). At the expungement hearing, D.L.H. testified that he had successfully completed probation two years before and had not had any subsequent contact with law enforcement. In the meantime, he had completed high school and was attending college. He also held part-time employment. D.LH. submitted a report recently prepared by a licensed clinical social worker (the Report). The Report detailed the conduct for which D.L.H. had been placed on probation three years earlier and, based on D.L.H.'s response to treatment and subsequent good behavior, concluded that, from a clinical perspective, his risk of recidivism was then as low as it would ever be. Though they had been notified, none of the victims or their parents appeared at the ex-pungement hearing or otherwise filed any objection. The county prosecutor confirmed that D.LH. had not had any subsequent contact with law enforcement and that he understood that the Report predicted a low risk of D.L.H. repeating his earlier conduct. Ultimately, however, the prosecutor expressed no opinion and deferred to the juvenile court judge on whether D.L.H's record ought to be expunged, stating, "[WJe'll just submit it to your honor."
T4 The judge denied the petition for ex-pungement. In doing so, the judge orally explained his reasoning:
Well, first of all, you know, I commend you for going through your ... treatment . and doing well in school and those kinds of things; but one of the things that the Court takes into consideration is the nature and seriousness of the offense.
In this particular incident, there were three victims, so we're talking about multiple victims, multiple abuses with at least one of the victims, and we're talking about very young victims as well; a one-year-old infant, a two-year-old boy, and [a third victim] two or three years old.
Given those factors, I'm not going to grant your petition for expungement. I'm denying that based upon the ... serious nature of the offense and the multiplicity of the offense, and the multiplicity of the victims. So that will be the order. Your petition for expungement will be denied.
D.L.H. appeals.
ISSUES AND STANDARDS OF REVIEW
T5 D.LH. argues that the juvenile court misinterpreted the statutory requirements for granting a petition for expunge *575 ment. D.L.H. also contends that the juvenile court failed to consider significant evidence that weighed in favor of granting his petition. The juvenile court's "interpretation ... of a statute is a question of law that we review for correctness." In re A.M., 2009 UT App 118, ¶ 6, 208 P.3d 1058 (citation and internal quotation marks omitted). However, when a juvenile court has properly interpreted and applied the statute, we will disturb its denial of an expungement petition only for abuse of discretion. See Utah Code Ann. § 78A-6-1105(2)(b) (explaining that a juvenile court may grant a petition for expungement only if "the rehabilitation of the petitioner has been attained to the satisfaction of the court"); cf. Horgan v. Sandy City, 2012 UT App 210, ¶ 2, 283 P.3d 1079 (per curiam) (explaining that decisions regarding expungement of an adult's record of arrest, investigation, or detention will not be set aside unless the district court abuses its broad discretion).
ANALYSIS
T6 The Juvenile Court Act (the Act) permits "[a] person who has been adjudicated" by the juvenile court to "petition the court for the expungement of the person's juvenile court record" onee he or she "reach[es] 18 years of age" and at least "one year has elapsed from the date of termination of the [Juvenile court's] continuing jurisdiction." Utah Code Ann. § 78A-6-1105(1)(a). Once a petition has been filed, the court must notify the county attorney as well as any victims and provide them an opportunity to testify at a hearing on the petition. Id. § T78A-6- @), (2)(a). The Act then sets out what the court must consider in deciding whether to grant the petition:
In deciding whether to grant a petition for expungement, the court shall consider whether the rehabilitation of the petitioner has been attained to the satisfaction of the court, taking into consideration the petitioner's response to programs and treatment, the petitioner's behavior subsequent to adjudication, and the nature and seriousness of the conduct.
Id. § 78&-6-1105(2)(b).
I. Interpretation of the Statute
17 D.LH. first asserts that the juvenile court misinterpreted the provision of the ex-pungement statute that identifies the factors the court must consider in determining whether an expungement ought to be granted. Specifically, D.LH. contends that the court erred in giving more weight to the third factor-"the nature and seriousness of the conduct"-than the other two because, according to D.L.H., "[the evident intent of the statute is that the juvenile court ... consider each of these specifically stated elements or factors ... [without giving] any one element or factor ... greater weight than any of the other elements or factors."
T8 When interpreting a statute, our first goal is to give effect to the statute's plain language. Baird v. Baird, 2014 UT 08, ¶ 36, 322 P.3d 728. In doing so, we "presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." In re J.M.S., 2011 UT 75, ¶ 13, 280 P.3d 410.
T9 The language of the expungement statute suggests that a juvenile court has considerable discretion: "[Iln deciding whether to grant a petition for expungement, the court shall consider whether the rehabilitation of the petitioner has been attained to the satisfaction of the court...." Utah Code Ann. § 78A-6-1105(2)(b) (Lexis-Nexis 2012) (emphasis added); cf. Black's Law Dictionary 1898-99 (9th ed.2009) (defining "rehabilitation" as "[the process of seeking to improve a criminal's character and outlook so that he or she ean function in society without committing other crimes"). The expungement statute then identifies three factors that the court must consider in making that determination: "the petitioner's response to programs and treatment, the petitioner's behavior subsequent to adjudication, and the nature and seriousness of the conduct." Utah Code Ann. § 78A-6-1105(2)(b). In light of the juvenile court's responsibility to determine whether the evidence demonstrates that petitioner has been rehabilitated "to the satisfaction of the court," id., those factors must be subject to balancing, with each factor being afforded the weight the court deems appropriate. Cf. *576 State v. Newland, 2010 UT App 380, ¶ 26, 253 P.3d 71 (noting that in applying a balancing test, a court should consider all of the factors but that the factors are not nee-essarily of "mathematically equal importance"); State v. Perkins, 2014 UT App 60, ¶¶ 19-20, 322 P.3d 1184 (explaining that while imposition of consecutive sentences requires consideration of a number of statutory factors, including the nature of the crime and the number of victims, along with the history, character, and rehabilitative needs of the defendant, the court's "discretion [in balancing those factors] is not to be surrendered to a mathematical formula by which numbers of cireumstances rather than weight of cireumstances are determinative" (citation and internal quotation marks omitted)).
10 Our conclusion that the expungement statute requires the juvenile court to weigh and balance the described factors rather than simply add them up seems compelled by the nature of the second and third factors. Unlike the first factor-"the petitioner's response to programs and treatment," Utah Code Ann. § 78A-6-1105(@)(b)-which is usually fixed by the time an expungement petition is filed, the second factor-"the petitioner's behavior subsequent to adjudication," id. -is dynamic. Thus, in many cireum-stances, the weight to be given the second factor in determining whether a petitioner has been rehabilitated depends to a significant degree on the passage of time since the juvenile court's jurisdiction terminated. For instance, a short period of good behavior may be less significant than a prolonged one in assessing a petitioner's rehabilitation.
€ 11 The third factor requires the juvenile court to consider the "nature and seriousness of the conduct." Id. To properly take this factor into account in determining whether the petitioner has been satisfactorily rehabilitated, the court must consider the nature of the conduct that originally brought the petitioner before the court and the likelihood that the petitioner will repeat the conduct, together with the possible consequences-to potential victims, among other things-if that conduct is repeated. Such a judgment necessarily involves weighing some conduct more heavily than other conduct. For example, shoplifting is much less serious than conduct involving violence, and while multiple unlawful acts generally weigh more heavily than a single misstep, a single serious unlawful act may weigh more heavily than multiple less serious acts. Yet if all three factors were of equal weight or of "mathematically equal importance," as D.L.H. contends, see Newland, 2010 UT App 380, ¶ 26, 253 P.3d 71, then the third factor would have no effect whenever the first two factors favored expungement. So long as the petitioner had performed well in his rehabilitation requirements and remained on good behavior since the adjudication, he or she must always be granted the request for expungement regardless of whether the underlying conduct was relative ly minor or extremely serious, as was the case here. And the second and third factors will often interact because more serious unlawful conduct may require a longer period of good behavior for the court to feel assured that rehabilitation has been accomplished.
1 12 Presuming, as we must, that the legislature used each word of the statute advisedly, we cannot adopt an interpretation that would require each factor to be weighed equally. Rather, the statute provides the juvenile court with the flexibility to give more or less weight to any one factor, provided that the court considers all three. We therefore conclude that the juvenile court did not misinterpret the requirements of the ex-pungement statute by giving the third factor added weight in its decision to deny D.L.H.'s petition for expungement.
II. Application of the Factors
113 Next, D.LH. asserts that the juvenile court failed to consider "a substantial amount of evidence pertaining to the [response to treatment and post-adjudication behavior] factors in ruling on the Petition for expungement." To the extent that this argument depends upon an interpretation of the expungement statute that requires the juvenile court to weigh each factor equally, we reject it for the reasons stated in Part I. Based on our review of the record, we also conclude that the court appropriately considered the evidence that supported expunge *577 ment of D.L.H.'s record in reaching its decision to deny the expungement petition.
T 14 D.L.H. claims that the juvenile court failed to consider that his probation ended early due to his excellent progress in counseling, his completion of all court-ordered obligations, and his therapist's opinion that D.LH. was unlikely to reoffend once released from court supervision. He also contends that the court failed to take into account the information in the Report that demonstrated that D.L.H. had been a model citizen since his adjudication and D.L.H.'s own testimony that he could be an even more productive member of society if expungement were granted. D.L.H. concludes that had the juvenile court appropriately considered these facts, particularly where there was no opposition to the expungement by either the prosecutor or the victims' families, it must have concluded that expungement was appropriate.
{15 The record adequately demonstrates that the juvenile court was aware of all of these facts. D.LH. testified at the expungement hearing that he had "been a good citizen since" his probation was terminated, finishing high school, starting college, and maintaining part-time employment. D.L.H. further reported, and the prosecutor confirmed, that he had not committed any violations of the law since probation ended. D.L.H. explained that the Report predicted that he had a low risk for reoffending, and he specifically asked the court to consider the Report in response to the judge's question, "[Alnything else you would like me to hear or take into consideration?" The court confirmed that it had a copy of the Report. D.L.H. then encouraged the court to grant the expungement so that he could "further help the community" by being "involved with more things." Following D.LH.'s testimony, the court heard from the prosecutor, who reported that although he was aware that the Report predicted D.L.H. as low risk for recidivism and that D.L.H. had been a law-abiding citizen since adjudication, he would "just submit it" for the court's consideration without offering an opinion or recommendation. The juvenile court itself then commended D.LH. on his successful and productive lifestyle since he was placed on probation in 2009.
€ 16 Despite all of this information, however, the juvenile court concluded that D.L.H. had not demonstrated to the court's satisfaction that D.L.H.'s "rebabilitation ... ha[d] been attained." See Utah Code Ann. § 78A-6-1105(2)(b) (LexisNexis 2012). The court cited the "serious nature of the offense[s]," the "multiple victims, multiple abuses," and young ages of the victims as reasons for denying the expungement that outweighed the other factors. It is implicit in the court's ruling that the court was not yet sufficiently assured that there was not still a risk (even if a low one) that D.LH. would repeat his behavior against children, particularly when his unlawful conduct had been against those whose age made them particularly vulnerable and less likely to be able to report what had cecurred. And that concern is not without reason because once expungement is granted, many significant safeguards-the record of D.LH.'s admissions and adjudication as well as any obligations he might have to give such information to an employer who asks, for example-vanish. See id. § 78A-6-1105(2)(c) (allowing the court to "order sealed the petitioner's records under the control of the juvenile court [and other agencies] ... pertaining to the petitioner's adjudicated juvenile court cases"); id. § 78A-6-1105(4) ("Upon entry of the [expungement], the proceedings in the petitioner's case shall be considered never to have occurred and the petitioner may properly reply accordingly. ..."). And though the risk of recidivism may be relatively low, the potential harm if the conduct recurs is very high due to "the nature and seriousness of [D.L.H.'s prior] conduct." See id. § 78A-6-1105(@2)(b). Because the court had evidence of each of the factors before it, we conclude that its decision to deny expungement was not an abuse of discretion but involved a reasoned weighing and balancing of the statutory factors. Cf. State v. Perkins, 2014 UT App 60, ¶ 20, 322 P.3d 1184 (explaining, in the context of reviewing a trial court's sentencing decision for abuse of discretion, that "[slimply because mitigating factors were ultimately outweighed by aggravating factors does not indicate inadequate consideration").
*578 {17 D.L.H. contends that because he has responded as well as he possibly could, denial of the petition to expunge his juvenile record does not promote the Juvenile Court Act's goals to "promote public safety and individual accountability by the imposition of appropriate sanctions" without "chargling a minor] with a crime," see Utah Code Ann. § 78A-6-102(b)(a); id. § 78A-6-116(3), and to "reha-bilitat(e], reeducat{e], and treat[ ]" minors so that they receive the "guidance and control" needed to "prevent[] ... future unlawfal conduct" and to "develop[ into] ... responsible citizens[ ]," id. § 78A-6-102(5)(b)-(c). The juvenile court was not satisfied with D.L.H.'s rehabilitation at this juncture-only three years after D.L.H.'s admissions to the conduct and two years after he was released from probation. We see nothing in the statute that precludes D.L.H. from reapplying for expungement at a later date. See id. § 78A-6-1105. If D.L.H.'s model behavior continues, the "behavior subsequent to adjudication" will likely take on more relative weight in the juvenile court's consideration of the three statutory factors. Whether that will ultimately shift the balance in favor of expungement at some future date, however, is for the juvenile court to determine in the exercise of its broad discretion under the statute.
CONCLUSION
[ 18 The juvenile court properly interpreted the expungement statute. It also appropriately considered all of the available information relevant to the three factors that must inform its assessment of whether D.L H. has been satisfactorily rehabilitated. We therefore conclude that the court acted within its discretion in denying the petition for expungement. f